STATE of Missouri,
Plaintiff-Respondent,

v.

William P. TAYLOR,
Defendant-Appellant.

No. 48101.

Missouri Court of Appeals,
Eastern District,
Division One.

April 16, 1985.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
May 17, 1985.

Application to Transfer Denied
June 25, 1985.

David Hemingway, St. Louis, for defendant-appellant.

John M. Morris, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

PUDLOWSKI, Presiding Judge.

The appellant, William Phillip Taylor, was convicted by a jury of the crime of receiving stolen property with a value of more than $150.00, a violation of § 570.080 RSMo 1978. The court found appellant to have been a persistent offender and, accordingly, sentenced him to fifteen years in the custody of the Missouri Department of Corrections. On appeal, appellant raises two contentions of error. First he contends that the evidence was not sufficient to support his conviction because there was allegedly no evidence that he knew or believed the property was stolen at the time he disposed of it. Appellant's second contention is that the trial court erred in over-

ruling his objection and mistrial request pertaining to certain statements made by the prosecutor during closing arguments concerning appellant's failure to testify at trial. We find no merit to his contentions of error and affirm.

The facts are as follows: On June 26, 1979, Melvin Bishop who was employed as a medical technologist for the West County Medical Laboratory in Ballwin, Missouri (of which he was also part owner) received a phone call from a man identifying himself as Dr. Phillip Taylor, Ph.D. The caller indicated that he had a microscope which he wished to sell. Mr. Bishop expressed an interest in purchasing the microscope and arranged to meet with appellant at the laboratory that same day.

Appellant brought the microscope, an American Optical, to the lab as planned, at which time Mr. Bishop talked to appellant about the microscope. Mr. Bishop used the discussion to determine whether appellant truly had the medical background which he claimed. Impressed by the good condition of the microscope and satisfied with appellant's medical knowledge, Mr. Bishop agreed to buy the microscope for $850.00. He deemed this to be a fair market price considering that, although it constituted roughly one-third the cost of a new model, he was purchasing a third-hand microscope. Mr. Bishop gave appellant a check for $850 and, in return, received the microscope and a bill of sale. This bill of sale showed that the microscope, serial number 780115, was previously sold to Dr. Taylor by a Richard Soto. The previous transfer bore a notarized date of August 16, 1976. Appellant indicated that this was the bill of sale he received when he purchased the microscope from Richard Soto. On the back of this bill of sale, appellant typed a new bill of sale, showing the transfer of ownership from himself to the West County Medical Laboratory.

Subsequent to the sale, Mr. John Griffin, a security officer for Missouri Baptist Hospital, contacted Detective Sergeant Dennis Niece of the Ballwin Police Department in connection with some microscopes recently

stolen from his hospital. Mr. Griffin informed Detective Niece that Mr. Bishop had recently purchased a microscope. Detective Niece went to the West County Laboratory where he confiscated the recently purchased microscope as stolen property. Detective Niece ran the information about the microscope in the National Criminal Information Computer System. As a result of the information received from this computer check, Detective Niece contacted the Memphis Police Department and Kay Mitchell, Chief Medical Technical for Methodist Hospital South in Memphis to verify that the microscope purchased by Mr. Bishop had in fact been stolen. According to Mr. Mitchell, the microscope had been stolen some time in mid-to late June, 1979.

Detective Niece conducted an investigation in connection with this stolen microscope. He attempted to contact appellant using a Houston, Texas address and telephone number given to Mr. Bishop by appellant at the time of the sale. These attempts proved to be unsuccessful, as did an attempt to track down appellant through a driver's license check. Detective Niece discovered that the address obtained through the license check was actually a post office box for the University of New Mexico.

On October 7, 1982, Mr. Bishop received a phone call at his lab, now located in Chesterfield, from appellant, who again stated that his name was Dr. Phillip Taylor. This time, appellant identified himself as a retired pathologist (which would have involved an M.D. degree) who had a son who was graduating from medical school and who was not going to follow his father's career in pathology. Appellant stated that he was interested in selling a microscope, which he had retained from his son. Mr. Bishop made arrangements with appellant to come out to the Chesterfield lab to show him the microscope. Mr. Bishop then immediately contacted Detective Niece at the Ballwin Police Department. Detective Niece made arrangements with Mr. Bishop to be at the Chesterfield lab when and if appellant brought the microscope.

Appellant arrived at the lab approximately two hours after the arrival of Detective Niece and his partner. A secretary escorted appellant to Mr. Bishop, who was in the lab, and then notified the officers that the person she escorted was the same person who had previously sold them the stolen microscope. The police officers then entered the lab whereupon Mr. Bishop also identified his caller as the same man who had previously sold them the stolen microscope. Detective Niece then told appellant that he was under arrest. Appellant stated that there must have been some mistake in that he had left an address and phone number where he could be contacted. At the time of the arrest, Detective Niece seized the microscope, substage light source, microscope cover and a bill of sale that appellant was using for the microscope.

At trial, Mr. Bishop identified appellant as the person who had sold him the microscope in 1979 and who had attempted to sell him the second microscope in 1982. Detective Niece also identified appellant as the man in Bishop's office in 1982. The prosecutor did not produce the 1979 microscope which the state alleged appellant disposed of as stolen property. Niece testified in cross-examination that he photographed the microscope in 1979, but lost the photographs when the police department moved in 1980. The court admitted the exhibit consisting of the microscope from October 1982, but did not pass it to the jury.

In reviewing this case, the facts and evidence and all favorable inferences reasonably drawn therefrom must be considered in the light most favorable to the state, disregarding all contrary evidence and inferences. *State v. McCoy,* 647 S.W.2d 862, 863 (Mo.App.1983).

In order to support a charge of receiving stolen property the state bears the burden of proving beyond a reasonable doubt that: 1) the property was in fact stolen, 2) the defendant exercised dominion over the property by disposing of it, 3) the

defendant knew or believed that the property had been stolen, and 4) the defendant intended to deprive the owner of a lawful interest in the property. *State v. Hurd,* 657 S.W.2d 337, 339 (Mo.App.1983). Appellant's challenge in this case concerns only the third element of this offense: knowledge or belief. In regard to this third element, the courts have generally recognized that "knowledge of the stolen character of goods is seldom proved directly and may be inferred from the facts and circumstances in evidence." *McCoy, supra* at 865. Therefore direct evidence of the defendant's knowledge or belief is not required. *State v. Rogers,* 660 S.W.2d 230, 232 (Mo.App.1983).

While the state did not produce any direct evidence proving appellant's knowledge or belief that the microscope was stolen, according to Rogers, the state was not required to do so. It is sufficient that the evidence adduced at trial supported a reasonable inference of appellant's knowledge of the stolen nature of the microscope. In view of the facts, there is no dispute that the microscope which appellant sold to Bishop on June 26, 1979, was stolen from the Methodist Hospital South in Memphis, between mid-to late June, 1979. Kathryn Mitchell testified that the hospital had acquired the microscope in December, 1972. Thus, the hospital had possession of the microscope between 1972 and June, 1979. Yet, the bill of sale which appellant presented as proving a legal transfer to him by Richard Soto was dated August 16, 1976. No explanation was given for this discrepancy and, thus, appellant's possession of the microscope remained unexplained. While unexplained possession of recently stolen property does not give rise to an inference that the possessor is guilty of receiving stolen property, it is nonetheless, "a circumstance that the jury is entitled to consider, together with other facts and circumstances in the case." *State v. Sours,* 633 S.W.2d 255, 258 (Mo.App.1982). Other factors which a jury may consider in determining whether a defendant is guilty of receiving stolen property include suspicious conduct and deceptive behavior, *Sours, supra* at 258, and "whether the defendant has given false, evasive or contradictory statements as to his possession of the property, the nature and character of the property as passing readily from hand to hand ... and other conduct and declarations of the defendant inconsistent with his claim of innocence." *McCoy, supra* at 865.

In addition to the unexplained possession of the recently stolen microscope, appellant gave false statements as to his possession of the microscope when he presented Mr. Bishop with a bill of sale purporting to represent a legal sale in 1976 from Richard Soto. In view of Ms. Mitchell's testimony as to the date the microscope was in possession of Methodist Hospital South, such a sale by Richard Soto to appellant could not have occurred. Second, appellant exhibited deceptive behavior in giving a false address and telephone number. Appellant also exhibited deceptive and suspicious behavior in representing himself as a doctor with a Ph.D. degree in the first instance in 1979 and as a doctor with an M.D. degree in 1982. In view of the fact that, in reviewing this case, the facts and evidence and all favorable inferences reasonably drawn therefrom must be considered in the light most favorable to the state, disregarding all contrary evidence and inferences, the third element of the offense of receiving stolen property— the requirement of knowledge or belief— was therefore proven beyond a reasonable doubt.

As pertaining to the trial court's overruling of appellant's objection and mistrial request, the trial court did not abuse its discretion to the prejudice of appellant. Appellant contends that the trial court erred in failing to grant the defendant's request for a mistrial during the closing argument on behalf of the state when the prosecutor stated "Don't you think the defendant would want to point that out." Appellant alleges that this statement was a comment upon his failure to testify in violation of § 546.270 RSMo, Rule 27.05(a), and

the Fifth Amendment of the United States Constitution.

The record on appeal reveals the following transpired at trial during closing argument:

(Mr. O'Blennis): Now, Mr. Walsh characterizes the state's entire case as a venire [sic]. And if it were a venire [sic], don't you think the defendant would want to point that out, defendant's attorney would want to point that out?

Mr. Walsh: Approach the bench.

(The following was heard at the bench, out of the hearing of the jury).

Mr. Walsh: Based on the prosecutor's statement, 'the defendant would want to point that out,' I would ask for a directed verdict. The only way the defendant could point that out is to testify. It is so close, I don't know what else it would be.

Mr. O'Blennis: I wanted to finish my statement. I was gong to say the defense attorney would put on evidence and name some names and he got it from the lawyer who made up the document, and so on and so forth.

The Court: All right, I will overrule the objection. You may proceed.

Mr. Walsh: He was going to say the phrase—The defendant would point out, he should say, the defendant's attorney. I would like to ask it be read back where he said the defendant and paused and started to say defendant's attorney.

Mr. O'Blennis: I did say defendant's attorney, but I did say defendant first.

The Court: Objection overruled. You may proceed.

Appellant contends that the prosecutor's use of the phrase "Point that out" is equivalent to the use of the word *testify*, and that therefore the prosecutor's statement constituted an impermissible and direct reference to appellant's failure to testify. Alternatively, appellant contends that even if these words are not considered as equivalent to the word *testify*, the prosecutor still violated the proscription against indirect comments on the defendant's decision not to testify.

The rules do prohibit such reference to an accused's failure to testify, but the comments made by the prosecutor during the closing argument fell outside of these rules. § 546.270 RSMo 1978, and Supreme Court Rule 27.05(a) provide:

If the accused shall not avail himself or herself to his or her right to testify, . . . it shall not be construed to affect the innocence or guilt of the accused, nor shall the same raise any presumption of guilt nor be referred to by any attorney in the case.

■ The case law categorizes such improper argument into "direct" and "indirect" references to the right not to testify. The indicia characterizing direct comments is the use of the words "defendant" and "testify" or words equivalent thereto. *State v. Reed*, 583 S.W.2d 531, 534 (Mo. App.1979). Indirect comments on this right are those which, when viewed in context, would cause the jury to infer that the remarks made reference to the accused's failure to testify. *Id.*

Upon the direct criterion, only a comment by the prosecutor which is a direct and certain reference to the failure of the accused to testify would be considered as satisfying the test. *State v. Hutchinson*, 458 S.W.2d 553 (Mo.1970). The argument in this case did not contain direct and certain reference to failure of appellant to testify. The phrase "point that out" cannot be equated with the word "testify."

■ Nor does the prosecutor's statement violate the proscription against indirect comments on the defendant's decision not to testify. In a fact situation such as that presented here, the scope of appellant's review of the action of the trial court with reference to objections to the comments made is:

Whether or not a particular improper argument is so prejudicial under the facts in the particular case, as to necessitate a reprimand of counsel or a discharge of the jury, is largely within the discretion of the trial court. An appellate court will not interfere unless the record shows that the trial court abused

its discretion to the prejudice of the appellant. *State v. Hutchinson, supra* at 556.

In the case of an indirect reference, the court must review the statement in the context in which it was made and determine whether it highlighted or was reasonably apt to have directed the jury's attention to the fact that the defendant did not testify. *Eichelberger v. State*, 524 S.W.2d 890, 894 (Mo.App.1975). In reviewing the decision reached in Eichelberger, the court in *State v. Arnold*, 628 S.W.2d 665 (Mo. 1982), reasoned that implicitly, "[T]he evidence referred to must be vital to the state's case and damaging to the accused. If it is not, a jury would not expect contrary testimony by the accused [and therefore defendant's] failure to testify would be neither highlighted nor the jury's attention directed to it."

The statement by the prosecutor was in response to a prior closing argument by the defense attorney claiming that the state's entire case is a veneer. Read in this context, the statement does not highlight the appellant's failure to testify rather it merely directs the jury's attention to the weakness of the appellant's case at trial. The prosecutor's statement relates to appellant's failure to offer evidence, rather than his failure to testify. This is critical distinction in that under § 546.270, "the prohibition is against commenting on failure of the accused to testify and not that the defendant did not offer evidence." *State v. Hutton*, 645 S.W.2d 22, 23–24 (Mo. App.1982). Appellant claims that the prosecution's statement was in reference to the "defendant" while the respondent claims his statement was in reference to "defendant's attorney." In view of the fact that the prosecutor's statement pertained to a failure to present evidence rather than a failure to testify, the question of whether the comment referred to defendant or defendant's attorney is inconsequential.

We have evaluated the entire record. We conclude that the "trial court did not abuse its discretion to the prejudice of appellant" and the comments of the prosecutor were not prejudicial or injurious to the defendant. Accordingly, we find no prejudicial error which would justify reversal of this case.

Judgment affirmed.

GAERTNER and KAROHL, JJ., concur.