STATE of Missouri,
Plaintiff/Respondent,

v.

Leonard M. PRIESMEYER,
Defendant/Appellant.

No. WD 36822.

Missouri Court of Appeals,
Western District.

Sept. 23, 1986.

Motion for Rehearing and/or
Transfer to Supreme Court
Denied Nov. 4, 1986.

Application to Transfer Denied
Dec. 16, 1986.

Andrew C. Webb, Sedalia, for defendant/appellant.

Jeff Mittelhauser, Asst. Pros. Atty., Sedalia, for plaintiff/respondent.

Before BERREY, P.J., and PRITCHARD and DIXON, JJ.

BERREY, Judge.

Appellant (defendant hereinafter) was convicted in this court tried case of receiving stolen property. Defendant was charged in the information with receiving stolen property over the value of $150. He was found guilty of receiving stolen property under $150, a class A misdemeanor. Defendant filed post trial motions which were overruled and he was sentenced to sixty (60) days in the Pettis county jail and fined $300 and costs. From this judgment and sentence the defendant appeals.

The defendant raises three points of trial court error: (1) failure not to acquit defendant at close of state's case because of insufficient evidence to prove the elements of the crime; (2) failure to grant a new trial after hearing evidence of unrelated crimes; and (3) failure to grant defendant probation contrary to the court's established practice in cases involving first offenders.

James Foster, owner of Jim's Garden Center in Sedalia, testified that five ornamental lawn statues were stolen from his business in mid-April, 1984. He identified these as: (1) St. Anthony, (2) Madonna, (3) Bashful Girl, (4) Farmer Boy, and (5) Love at Spring. According to Foster they had a combined retail value of $164.50.

James Aldrich next testified that he went to Jim's Garden Center with Floyd Flippen and a female companion indentified only as "Cat" looking for fence posts at 10:30 at night. They saw no fence posts but did observe the statues. In order to "make money off" of them they appropriated the statues by loading them into Floyd's car. After both Floyd and James loaded the statues they drove to defendant's house because Floyd said there was a possibility defendant might buy them.

James was an acquaintance of the defendant but when they drove to defendant's house Floyd went to the door. The defendant and Floyd returned to the car and James then got out of the car and went to the rear to open the trunk. At this time Floyd and defendant were negotiating the price. Defendant paid $5 or $10 for all five

of the statues and had them put in the saddle compartment of his horse trailer. James told defendant the statues were from Jim's Garden Center.

Michael Kehl, Pettis County Deputy Sheriff, testified he had been to the defendant residence to execute a search warrant and observed statuary of the Mother Mary, a little boy, a monk holding a boy and a man and woman. A subsequent search warrant was issued on the property of defendant authorizing a search for lawn statuary but when the search warrant was served no statuary was found.

Next Chief James E. Carter of the Sedalia police force testified regarding a post *Miranda* statement he received from defendant. Defendant stated he had purchased the statues in a second hand store in Kansas City a long time ago and the store was no longer there. Chief Carter also saw the statues in defendant's garage and on a subsequent visit they were gone. On cross-examination Chief Carter stated he saw statues of St. Anthony, Mother Madonna, farm boy and one a boy and girl.

Sedalia police officer Rene Dedrick testified he served a search warrant on defendant listing statues and welding rods. He had previously seen the statues in the garage and asked defendant to open up the garage. Defendant complied and the garage contained no statues. A search of the residence likewise was fruitless. Officer Dedrick then asked defendant about the statues and defendant stated he knew nothing about them.

In addition, the state offered evidence that stolen tires, wheels, hub caps, fence posts, and barbed wire were recovered under a search warrant in the field across from defendant's home. The state then requested the court to disregard this evidence and the court without objection stated "very well".

Defendant then offered evidence from the owner of Jim's Garden Center concerning the identification numbers of the statues in question. Next Barbara Peek stated she lived with defendant and had recently

purchased five statues bearing identical names to those stolen for $115.50 less tax.

Defendant's Point I alleges the state failed to prove the elements of receiving stolen property.

The statues in question were stolen from Jim's Garden Center in Sedalia. The defendant received the property and instructed the thieves on where to place it; the defendant retained the property and later disposed of it knowing or believing it had been stolen and received, retained or disposed of the property with the purpose of depriving the owner of it.

Seldom is the state able to prove directly that a defendant had knowledge of the stolen character of the goods. This knowledge may be inferred from the facts and circumstances of the evidence. *State v. McCoy,* 647 S.W.2d 862, 865 (Mo.App.1983). The defendant herein received the statues about 11:00 p.m., ordered them placed in a horse trailer and paid $5 to $10 for all five statues. He was also told they were from Jim's Garden Center.

■ The giving of false, evasive, or contradictory statements by defendant as to his possession of the property and the nature and character of the property, his suspicious behavior and his declarations, inconsistent with his claim of innocence, may be taken together to establish knowledge, *State v. Hayes,* 597 S.W.2d 242, 248 n. 6 (Mo.App.1980), as may the unexplained possession of recently stolen property be considered with other facts and circumstances in the case. *State v. Sours,* 633 S.W.2d 255, 258 (Mo.App.1982). The defendant told several conflicting stories concerning the statues, including denying any knowledge of the statues to Officer Dedrick of the Sedalia police department. In fact, Dedrick had seen the statues in defendant's garage while executing an earlier search warrant. This denial occurred on May 1, 1984, yet on April 26, 1984, when interviewed by Chief Carter, he stated he had acquired the statues from a second hand store in Kansas City.

The cases cited by defendant are not supportive. In fact, *State v. Woods,* 553 S.W.2d 333, 334 (Mo.App.1977), stands for the proposition that a factor in establishing guilty knowledge is "insufficiency of price." Certainly the $5 or $10 paid by defendant for five statues with a value between $111.50 to $164.50 is an insufficient price and may be considered as one of the factors establishing knowledge.

The trial court's findings in a court-tried case will not be disturbed if there is sufficient evidence to support them. *State v. Griffin,* 640 S.W.2d 128, 130 (Mo.1983); Rule 27.01(b). Defendant's Point I is denied.

■ In his second point of error, defendant complains that the trial court erred in reviewing evidence of other unrelated crimes although this evidence was later withdrawn by the state before it rested its case. The state initially offered evidence that several police agencies had previously recovered stolen wheels, tires, spools of barbed wire and fence posts when they had executed a search warrant; the stolen property was found in a field across the road from the defendant's house. The state, however, asked the trial court to disregard this evidence before the close of its evidence. It is presumed that in a court-tried case that the trial court considered only competent evidence and that it ignored any evidence improperly admitted. *Keen v. Dismuke,* 690 S.W.2d 822, 825 (Mo.App.1985). It is assumed that this evidence, withdrawn by the state by its own volition, was not considered by the court, or prejudicially influenced the trial court's decision.

In Point III defendant alleges the trial court erred in sentencing him to sixty (60) days in jail and a fine when he was only a first offender. The defendant alleges the trial judge's established policy was to grant probation to first offenders and therefore his rights to equal protection under the Fourteenth Amendment were violated. Defendant acknowledges this is a case of first impression in Missouri.

Section 557.011(1), RSMo. 1978 provides:

1. Every person found guilty of an offense shall be dealt with by the court in accordance with the provisions of this chapter, except that for offenses defined outside this code and not repealed, the term of imprisonment or the fine that may be imposed is that provided in the statute defining the offense; however, the conditional release term of any sentence of a term of years shall be determined as provided in subsection 4 of section 558.011.

Section 558.011.3(2) provides:

(2) A sentence of imprisonment for a misdemeanor shall be for a definite term and the court shall commit the defendant to the county jail or other authorized penal institution for the term of his sentence or until released under procedure established elsewhere by law.

Section 557.011.2, RSMo 1978 provides:

2. Whenever any person has been found guilty of a felony or a misdemeanor the court shall make one or more of the following dispositions of the offender in any appropriate combination. The court may:

(1) Sentence the person to a term of imprisonment as authorized by chapter 558, RSMo;

(2) Sentence the person to pay a fine as authorized by chapter 560, RSMo;

(3) Suspend the imposition of sentence, with or without placing the person on probation;

(4) Pronounce sentence and suspend its execution, placing the person on probation;

(5) Impose a period of detention as a condition of probation, as authorized by section 559.026, RSMo.

■ The trial judge properly performed his duties. He followed the dictates of the legislature in sentencing the defendant. Nowhere in our code is a first offender guaranteed probation. Circuit courts must have an absolute unfettered ability to grant or deny probation. Probation is not a "right" but a "privilege." *State v. Austin,* 620 S.W.2d 42, 43 (Mo.App.1981). Such denial of probation is not reversible on appeal absent showing of extreme abuse of discretion. *U.S. v. Rifen,* 634 F.2d 1142, 1144 (8th Cir.1980).

■ The fact that the trial judge has a history of granting first offenders probation cannot be translated to extreme abuse of discretion simply because he denies a first offender probation.

The sixty (60) day sentence and fine were well within the punishment prescribed by the statute and within the trial court's discretion. The record does not reveal any abuses of discretion by the learned trial judge. Point III is denied.

Judgment affirmed.

All concur.