STATE of Missouri,
Plaintiff–Respondent,

v.

Hubert RICHARDSON,
Defendant–Appellant.

No. 57149.

Missouri Court of Appeals,
Eastern District,
Division Three.

Aug. 28, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 27, 1990.

Application to Transfer Denied
Nov. 20, 1990.

Charles M. Shaw, Bradley S. Dede, James Jay Knappenberger, Shaw, Howlett & Schwarz, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., John P. Pollard, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SMITH, Judge.

Defendant appeals from his conviction of receiving stolen property having a value in excess of $150. The jury recommended a fine as punishment and the court imposed a fine of $2,000. We affirm.

Defendant was an employee of Monsanto Chemical Company at its Queeny plant in St. Louis. Monsanto was experiencing loss of equipment including industrial gloves. It hired a private detective agency to investigate the loss. An employee of the agency, Robert Cope, attended flea markets in Pevely and Barnhart, Missouri. At the Pevely flea market he purchased two pairs of industrial gloves from defendant who had set up a table at the market. One pair was a tan leather glove with a white cloth gauntlet cuff, the other pair was a gray suede type work glove. Cope paid defendant two dollars a pair for the gloves. Subsequently he purchased eighteen additional pairs of the gauntlet cuff gloves from defendant at the market, again paying two dollars a pair. Cope then asked if he could buy a case of the gloves. Defendant advised him that he had more gloves at home, that the gloves came six dozen to the case and that he had sold several cases of the gloves at the market. Cope subsequently contacted defendant by telephone and arranged a meeting with him at an address in St. Louis to purchase additional gloves. At the meeting he purchased six dozen pairs of gauntlet cuff gloves, and a dozen pair of the gray suede type gloves. The gloves were packaged in plastic bags, one dozen pair per bag. He paid the defendant $180 for the gloves. The telephone

conversation arranging the meeting was tape recorded by Cope, and the meeting itself was videotaped by his associates.

The gauntlet gloves are a special glove manufactured by Cardinal Glove Company. They are supplied to Monsanto by Wise El Santo Company which has an exclusive dealership from Cardinal in an area with a radius of two hundred fifty miles from St. Louis. Monsanto had approached Wise El Santo with a drawing of the glove it desired and Wise El Santo in turn had approached Cardinal. Wise El Santo distributes the gloves exclusively to the Monsanto Queeny plant. The gauntlet gloves were being sold by Wise El Santo to Monsanto for $4.95 per pair at the time Cope purchased them from defendant. The gloves are received by Wise El Santo packed ten dozen in a case. On Monsanto's instructions they are repacked by Wise El Santo to six dozen to a case before shipment to Monsanto. The suede type gloves are also sold by Wise El Santo to the Monsanto Queeny plant exclusively. The rubber gloves are also sold by Wise El Santo to Monsanto but not exclusively. There was a stipulation that Cardinal had, prior to Cope's purchase, distributed 110 dozen of the gauntlet cuff gloves to Nashville, Tennessee, 20 dozen to Knoxville, Tennessee, 20 dozen to LaPorte, Texas, and these were all distributed to DuPont. An unspecified number of gloves were sold to a location on the West Coast.

After the last Cope purchase defendant was questioned in the Monsanto offices by Scott Biondo, an employee of the detective agency, and Peter Lowell, an employee of Monsanto. Initially defendant denied ever seeing a glove like the gauntlet cuff glove, denied having ever sold a glove like that, and denied ever in his life having had in his possession such a glove. After viewing the videotape of the last Cope transaction defendant stated he had misunderstood the previous inquiry; that he had seen such a glove before and had had possession of such gloves but that he had never seen the glove at the Queeny plant. He stated he purchased the gloves from a Jim Smith but did not know where he could be found. There was testimony that the gloves are used extensively by chemical workers in the Queeny plant including one of defendant's witnesses who saw and talked to defendant almost daily at work. Defendant worked in the electrical department.

Defendant testified at trial that he did sell the gauntlet cuff gloves at flea markets and that he purchased them from another flea market merchant named Jim Mayer or Meyer. He has not seen Mayer since the Cope transaction. Defendant produced a document which he stated was a receipt from Mayer. He testified he paid Mayer nine or ten dollars a dozen for the gloves.

■ Defendant first contends that the evidence was insufficient to support his conviction. The elements of the offense of receiving stolen property are (1) receiving, retaining or disposing of the property of another, (2) for the purpose of depriving the owner of a lawful interest therein, (3) knowing or believing that the property has been stolen. Sec. 570.080, R.S.Mo.1986; *State v. Cummings*, 765 S.W.2d 366 (Mo. App.1989) [1,2]. As with proof of any mental state direct evidence of knowledge or belief that the goods were stolen is seldom available. Such mental state is usually established by inference from facts or circumstances in evidence. *State v. Sutton*, 764 S.W.2d 157 (Mo.App.1989) l.c. 158. Receiving goods at a price far below its reasonable market value, possession of recently stolen property, declarations or conduct inconsistent with a claim of innocence, and false, evasive or contradictory statements about the possession are circumstances from which knowledge or belief can be inferred. *State v. Wells*, 752 S.W.2d 396[1] (Mo.App.1988).

■ Shortly before defendant's sale to Cope, Monsanto was experiencing substantial losses of industrial gloves. The gloves defendant was selling were special order gloves sold only to the Monsanto Queeny plant in the St. Louis area. The gloves were repackaged specially for Monsanto by the distributor and the gloves received by Cope were packaged the same way. It is a reasonable inference that the gloves in de-

fendant's possession were gloves stolen from Monsanto. There was evidence that no employee, including defendant, was authorized to remove the gloves from the plant. Defendant claimed he purchased the gloves for less than one-fifth of their cost to Monsanto and he sold them for forty percent of that cost. A jury could conclude that a reasonable person would know the consideration paid was far below the reasonable value of the gloves. § 570.080.2(3). Defendant gave inconsistent and contradictory statements about his knowledge and possession of the gloves when questioned by his employer. He gave inconsistent identifications of the individual from whom he allegedly purchased the gloves. A jury could further have found that his statement that he had never seen the gloves at the Queeny plant was false given their widespread use and defendant's longtime employment at the plant and his job which required plantwide activities. The evidence was sufficient to support the verdict.

■ Defendant complains of two evidentiary rulings. Both had to do with Monsanto employees' suspicions that defendant was involved in thefts of company property. Defendant contends this implied that defendant was involved in stealing the gloves, an offense with which he was not charged. We find no error. The statement and the testimony were elicited to establish the circumstances under which defendant came under surveillance by the detective agency. The statement and testimony did not state that defendant had stolen the property but only that the company was suspicious of him. The crimes of stealing and receiving stolen property are closely related and both can be utilized to prosecute the thief. We are unable to conclude that the statement or the testimony were improper or that defendant sustained any prejudice.

■ Defendant also complains about testimony of an employee of Monsanto that the gloves were manufactured exclusively for Monsanto on the basis such testimony was hearsay. The distributor testified at length as to the exclusivity so any testimony by the Monsanto employee was cumulative and nonprejudicial.

■ Defendant challenges two instructions on the basis they lowered the burden of proof or shifted it to defendant. *State v. Antwine*, 743 S.W.2d 51 (Mo. banc 1987) [12] has resolved this challenge to MAI–CR3d 302.04. The "shifting" argument is directed to that portion of MAI–CR3d 312.10 (the hammer instruction) which reads:

"But a juror should not agree to a verdict that violates the instructions of the Court, nor find as a fact that which under the evidence and in his conscience he does not believe beyond a reasonable doubt to be true."

The defendant here did not bear the burden of proving any fact to be true. The burden was on the state and the instructions make that clear. It is difficult to conceive what fact a juror would believe defendant had to establish to support a verdict. We are unable to perceive any "shifting" of the burden of proof from this instruction.

Judgment affirmed.

SATZ, P.J., and GRIMM, J., concur.