**STATE of Missouri, Respondent,**

v.

**Michael C. LANGDON, Appellant.**

**No. SC 85086.**

Supreme Court of Missouri,
En Banc.

July 29, 2003.

808

William J. Ekiss, St. Louis, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Asst. Atty. Gen., for Respondent.

LAURA DENVIR STITH, Judge.

Michael C. Langdon was convicted of the class C felony of receiving stolen property by retaining it, in violation of section 570.080,[1] and was sentenced to 9 months in jail and fined $1,000.[2] Mr. Langdon appeals, arguing the state failed to meet its burden of proving beyond a reasonable doubt that he retained property knowing or believing it to be stolen, an essential element of the crime of which he was convicted. Because the evidence was insufficient to permit the jury to find beyond a reasonable doubt that Mr. Langdon retained stolen property, this Court reverses.

---

1. All statutory references are to RSMo 2000 unless otherwise indicated.

2. Under section 570.080 as it was in effect at the time of the crime, receiving stolen property was a class C felony if the property involved had a value of $150 or more.

## I. FACTUAL BACKGROUND

Fearing he would lose his savings in a Y2K computer glitch, Kevin Dunnerman withdrew approximately $4,500 from his bank in December 1999. He placed the money, along with three handguns, in a locked briefcase that he kept in his bedroom. One of the handguns was a 9–mm Smith and Wesson, for which Mr. Dunnerman had a permit. Mr. Dunnerman did not have a permit for the other two guns. On Christmas Eve 1999, Mr. Dunnerman discovered his briefcase was missing and contacted the authorities.

Mr. Dunnerman told the police that he had only discussed the withdrawal of his savings with one person prior to the burglary, Robert Peyton Coleman, a co-worker. Because Mr. Coleman had once given Mr. Dunnerman a ride to work, he was also familiar with where Mr. Dunnerman lived. The police contacted Mr. Coleman a few days after talking with Mr. Dunnerman about the burglary, but he denied any wrongdoing.

For reasons apparently unrelated to the burglary of Mr. Dunnerman's home, the police obtained a warrant to search Nathan Speaks' home on March 31, 2000. Nathan lived in the home of his stepfather, defendant Michael Langdon, along with Mr. Langdon's wife and teenage daughter. While conducting the search, police came upon one of Mr. Dunnerman's stolen handguns in the Langdon garage.

The police also searched the three bedrooms in the Langdon home. No witnesses at trial testified with certainty as to who lived in which bedroom, although a police witness indicated that, from the décor, police surmised that the downstairs bedroom belonged to a young man such as Nathan, an upstairs bedroom containing a twin bed belonged to Mr. Langdon's teenage daughter, and the master bedroom belonged to Mr. and Mrs. Langdon.

The master bedroom had two closets, one containing women's clothing and the other men's clothing. In the latter closet, police found several guns, including numerous rifles, shotguns, and pistols stored in a plastic case, as well as a cardboard box filled with different types of ammunition. They later determined that Mr. Langdon did not have a St. Charles County permit for any of these guns and that none of these guns were stolen.

The police also searched a nine-drawer dresser located in the master bedroom. In one of the drawers, they discovered Mr. Dunnerman's 9–mm Smith and Wesson partially covered by clothing, along with several containers of ammunition. Mr. Langdon did not have a St. Charles County permit for the gun; as a 20-year-old, Nathan was too young to have a permit for a gun.

There is no dispute that the gun found in the dresser drawer is in fact one of the guns that was stolen from Mr. Dunnerman. The issue is whether the state has shown that Mr. Langdon possessed the gun and did so knowing or believing it was stolen and with an intent to deprive the owner of it. The record shows that Nathan's friend, Mr. Coleman, admitted to police in April 2000, about a month after the search of the Langdon home, that he had passed on information about Mr. Dunnerman's withdrawal of money to Nathan and that a week after the burglary Nathan gave him $2,000 as his share of the spoils. Mr. Coleman later pleaded guilty to receiving stolen property based on that $2,000 payment from Nathan, received a jail sentence, and was ordered to pay Mr. Dunnerman $2,000 as restitution.

While Mr. Coleman's confession implicated Nathan in the burglary, the police did not arrest Nathan for the burglary, although the record does not indicate

whether this is because the evidence of his participation is equivocal, or for some other reason. Mr. Coleman did not implicate Mr. Langdon or indicate that the latter had any knowledge of the burglary. Mr. Langdon did not give any statement either admitting or denying that the room was his, that the gun was his, or that he knew about the existence of the gun or believed that it was stolen. Nonetheless, the police arrested Mr. Langdon and charged him with "retaining" the 9–mm Smith and Wesson found in the dresser, although the police did not charge him with retaining the weapon found in the garage. From these facts, it appears that his arrest was based on the fact police found the weapon in the dresser containing men's clothing in what appeared to be his bedroom.

At Mr. Langdon's trial, Mr. Dunnerman, Mr. Coleman, and an officer who searched the home (but not the officer who found the 9–mm handgun) testified to the above facts. The jury was also shown photographs of the master bedroom, the guns and ammunition in the closet, and the drawer where the 9–mm handgun and ammunition were found. The record is not clear as to what type of ammunition was in the drawer and which gun or guns it was for, although the photographs show that the drawer contained more than one type of ammunition.[3] Finally, an employee of the St. Charles County sheriff's department testified that St. Charles County records did not indicate that Mr. Langdon had applied for a permit there for the 9–mm Smith and Wesson handgun or, indeed, for any of his other guns. She also testified that her records would not reflect whether he had applied for any permits or registered his guns elsewhere.

Mr. Langdon moved for acquittal at the close of the state's evidence, arguing that the above evidence was insufficient to show that he knowingly retained a stolen gun. The court overruled the motion. Mr. Langdon chose to rest on his motion for acquittal and presented no evidence. The jury convicted him of receiving stolen property. Mr. Langdon appealed. Following opinion by the Missouri Court of Appeals, Eastern District, this Court granted transfer. *Mo. Const. art. V, sec. 10.*

## II. STANDARD OF REVIEW

In reviewing a challenge to the sufficiency of the evidence, this Court determines whether there is sufficient evidence from which a reasonable juror could have found the defendant guilty beyond a reasonable doubt. In applying this standard, the Court:

> must look to the elements of the crime and consider each in turn.... [The Court is] required to take the evidence in the light most favorable to the State and to grant the State all reasonable inferences from the evidence. [The Court] disregard[s] contrary inferences, unless they are such a natural and logical extension of the evidence that a reasonable juror would be unable to disregard them. Taking the evidence in this light, [the Court] consider[s] whether a reasonable juror could find each of the elements beyond a reasonable doubt.

*State v. Grim,* 854 S.W.2d 403, 411 (Mo. banc 1993), *cert. denied,* 510 U.S. 997, 114 S.Ct. 562, 126 L.Ed.2d 462 (1993).

Courts view the evidence in the light most favorable to the verdict and give the state the benefit of all reasonable inferences. But, in so doing, courts will not

---

**3.** The photograph of the drawer was taken after the 9–mm handgun was removed, although boxes of ammunition are visible.

supply missing evidence or give the state the benefit of unreasonable, speculative or forced inferences. *State v. Whalen,* 49 S.W.3d 181, 184 (Mo. banc 2001).

## III. SUFFICIENCY OF EVIDENCE OF RETAINING STOLEN PROPERTY

### A. Elements of Retaining Stolen Property Include Proof of Scienter

This Court agrees with Mr. Langdon that the state failed to present sufficient evidence ·to permit a reasonable juror to find beyond a reasonable doubt that he committed the offense of retaining stolen property in violation of section 570.080. That statute states in relevant part that "[a] person commits the crime of receiving stolen property if *for the purpose of depriving the owner of a lawful interest therein,* he receives, *retains* or disposes of property of another *knowing that it has been stolen, or believing that it has been stolen." Sec.* 570.080 (emphasis added).

█ In resolving this issue, it is important to keep in mind that Mr. Langdon is not charged with theft of the gun, but with *retaining* a stolen gun. The cases require that, to convict a person under section 570.080 for retaining stolen property, the state must show that: (1) defendant retained the property that was stolen; (2) defendant exercised dominion over the property by retaining it; (3) defendant knew or believed that the property was stolen; and (4) defendant intended to deprive the owner of a lawful interest in the property. *Sec.* 570.080; *State v. Bird,* 1 S.W.3d 62, 63–64 (Mo.App. E.D.1999).

Accordingly, the verdict director below stated:

If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about March 31, 2000, in the County of St. Charles, State of Missouri, the defendant retained a Smith & Wesson Model 915 9mm Semi–Automatic pistol, serial # VCH1210, and

Second, that the Smith & Wesson Model 915 9mm Semi–Automatic pistol, serial # VCH1210 was the property of another, and

Third, that at the time defendant retained this property, he knew or believed it had been stolen, and

Fourth, that defendant retained the property for the purpose of withholding it from the owner permanently, and

Fifth, that the property had a value of at least one hundred fifty dollars,
then you will find the defendant guilty of receiving stolen property.

. . . .

Mr. Langdon did not contest the portions of the verdict director submitting that the 9–mm Smith and Wesson was stolen, that it had a value of over $150, and that it was found in the dresser drawer. He did contest the other issues submitted, however. In particular, he argued that there was insufficient evidence to show that the bedroom or dresser in which the gun was found belonged to him; thus, the state did not prove possession. Further, he argues, the state failed to make a submissible case on elements three and four of the crime, which require proof not only that he possessed the gun, but also that he knew or believed it was stolen and intended to deprive the owner of it.

### B. Unexplained Possession of Recently Stolen Property as Evidence of Scienter

█ In determining whether the state met its burden of proof on these issues, it is important to keep in mind that in Missouri, unlike in some other states, mere unexplained possession of recently stolen property does not give rise to an inference that the possessor is guilty of receiving stolen property. *State v. Gardner,* 741

S.W.2d 1, 9 (Mo. banc 1987). *Compare cases discussed in* Annotation, *"Possession of recently stolen goods by one charged with receiving them as evidence on question of guilty knowledge,"* 68 A.L.R. 187–93 (1930); Annotation, *"What constitutes 'recently' stolen property within rule inferring guilt from unexplained possession of such property,"* 89 A.L.R.3d 1202–42 (1979).

■ This does not mean that such evidence is irrelevant. Rather, while unexplained possession of recently stolen property may not be sufficient in itself to give rise to an inference of guilt, it is "a circumstance that the jury is entitled to consider together with the other facts and circumstances in the case." *Gardner,* 741 S.W.2d at 9. Accord, *State v. Lindsey,* 868 S.W.2d 114, 117 (Mo.App. W.D.1993). Indeed, because direct evidence that a defendant knew or believed property was stolen is seldom available, the state normally is forced to rely on such circumstantial evidence to prove defendant's criminal intent. *See State v. Morgan,* 861 S.W.2d 221, 222 (Mo.App. E.D.1993).

Prior cases have identified numerous types of "other facts and circumstances" that, together with unexplained possession of recently stolen property, have been found sufficient to make a submissible case of the scienter requirement for proving receipt or retention of stolen property. *State v. Shigemura,* 768 S.W.2d 620, 624 (Mo.App. E.D.1989), stated, "the giving of false, evasive or contradictory statements by the defendant, such as his denial that the car had been used on the day of the robbery and his statement that no one was in his home, are matters which may be considered in establishing knowledge." Similarly, the courts will consider suspicious conduct and deceptive behavior, evidence that the property was altered, such as by having serial numbers obliterated or filed off, or evidence that it was sold for less than its reasonable value. *See e.g., Morgan,* 861 S.W.2d at 222 (Mo.App. E.D. 1993) (inadequate price and serial numbers pried off); *State v. Applewhite,* 682 S.W.2d 185, 187–88 (Mo.App. 1984) (deceptive behavior and false statements); *State v. Richardson,* 797 S.W.2d 755, 757 (Mo.App. E.D.1990) ("receiving goods at a price far below its reasonable market value, ... declarations or conduct inconsistent with a claim of innocence, and false, evasive or contradictory statements about the possession are circumstances from which knowledge or belief can be inferred"); *State v. Sours,* 633 S.W.2d 255, 258–59 (Mo.App. S.D.1982) (suspicious, deceptive behavior); and *State v. Taylor,* 691 S.W.2d 379, 382 (Mo.App. E.D.1985) (same plus evasive and contradictory statements and similar conduct inconsistent with innocence).

*C. Evidence that Defendant had Unexplained Possession of Recently Stolen Property*

In applying the law regarding retention of stolen property to the instant case, this Court must first determine whether the state has shown that Mr. Langdon was in unexplained possession of recently stolen property, for absent such evidence even the state does not claim that it has made a submissible case.

■ *1. Possession.* The state says that it proved that Mr. Langdon possessed the stolen 9–mm handgun by showing that he exercised dominion over the gun in that it was found in a dresser drawer containing men's clothing in the master bedroom. From this, the state argues, the jury could infer that the room belonged to Mr. Langdon and that he possessed what was in it. Mr. Langdon counters that he never admitted that the bedroom in which the gun was found was his or that the dresser was his. Even if he had, he argues the state

never proved when the gun was put in the drawer or that he used the drawer in which the gun was found with sufficient frequency to have found the gun after it was placed there.

While this Court agrees with defendant that the state's evidence of possession was weak, the Court finds that it was sufficient to allow the jury to infer Mr. Langdon's possession of the gun. The evidence as to the types of clothes and furniture in the bedroom in which the gun was found was sufficient to permit the jury to infer that the room belonged to Mr. Langdon and that the dresser, containing only men's clothing, was his dresser, and so that he at least constructively possessed the gun. The jury could even infer, from the gun's presence in the drawer, that defendant knew it was present, although such an inference is certainly not required where, as here, there is no showing when or how the gun was placed in the drawer or how often Mr. Langdon used that drawer.

■ *2. Unexplained Possession of Property Recently Stolen.* It is less clear that the state has proved that Mr. Langdon's possession of the gun was *unexplained* or that he possessed it while it could be considered *recently* stolen. Here, unlike in many cases cited by the parties, although it appears no one has been convicted of committing the burglary itself and the record is merely suggestive of Nathan's involvement as the burglar, both the state and the defense suggested to the jury in argument that the actual theft of the gun was committed by a person other than the defendant—specifically, that Mr. Langdon's stepson Nathan stole the gun, acting on a tip provided by his friend Mr. Coleman. Nathan lived in the same house as Mr. Langdon. While nothing explains how the second gun came to be secreted in the dresser drawer in the master bedroom, both the state and defendant argued that

it was clear how it came to be in the house—Nathan brought it there after stealing it. There could be many innocent explanations for how it came to be in the drawer—that Nathan hid it there, or Nathan gave it to his father as a present, or that Nathan told his father he borrowed it, or even that his father confiscated it in order to return it once he·found Nathan had stolen it. It is also possible that Nathan said, "here, Dad, I stole this gun for you—why don't you keep it." But, like the other possibilities just mentioned, to so infer the jury would have had to engage in pure speculation.

The record also does not show *when* the gun came to be placed in the dresser drawer. If it occurred soon after the burglary, and if Mr. Langdon used the drawer with any frequency, he probably knew it was present. If it was only placed in the drawer to hide it from the police, however, or for some other reason was placed there only some time after the burglary, then no such inference can arise.

■ It is to avoid just such confusion that the cases say that the evidence must show *unexplained* possession of *recently* stolen property. As C.J.S. notes, "[t]he proper test of recency is whether the time lapse between the theft and accused's possession of the property is sufficiently short, given the circumstances of the case, to preclude the possibility of a transfer of the stolen property from the thief to an innocent party." 76 C.J.S. Receiving Stolen Goods, sec. 27 (1994). What may be sufficiently recent will depend on the facts and circumstances of the particular case, including the type of property stolen, how easy it is to sell, and how likely it is to be sold innocently. *See, e.g., Sours,* 633 S.W.2d at 258–59 (possession of pistol stolen 8 days earlier, later sold for half its value and other suspicious comments sufficient to meet standard); *State v. Hedrick,*

499 S.W.2d 583 (Mo.App. W.D.1973) (19 hours sufficiently recent); and *State v. Denison*, 352 Mo. 572, 178 S.W.2d 449, 453 (Mo.1944) (possession of adding machine two months after larceny was not too remote to permit inference where adding machines are not readily marketable and defendant was not in business of possessing them).

In circumstances similar to the instant case, *State v. Bird*, 1 S.W.3d at 64, found that the state had failed to support a finding of unexplained possession of recently stolen property. Mr. Bird was charged with retaining a stolen rifle. The evidence showed that the rifle was stolen on December 10, 1996, and was worth approximately $300. It was found in a sporting goods store 7 months later, August 14, 1997. The store had acquired it from a person who had in turn acquired it from defendant Bird in January or February 1997 in return for work that person had done on defendant's car. There was no evidence that the rifle was not of comparable value to the repair work done, and no attempt had been made to alter or obscure its serial numbers. While defendant was shown to have been in possession of and to have sold the rifle one to two months after it was stolen, he did not testify, and no evidence was offered as to when or how he came into possession of the rifle. Nonetheless, he was convicted of retention of stolen property knowing or believing that it had been stolen.

The court of appeals reversed, stating:

We conclude that the evidence viewed in light of the verdict is insufficient to support the verdict. There is no evidence to support a finding connecting defendant with the December 10, 1996 burglary during which the rifle was stolen. There is no evidence to support a finding regarding the circumstances in which defendant obtained the rifle.

Particularly, there is no evidence to support finding when defendant acquired the rifle. *Thus, there is no unexplained possession by defendant of recently stolen property.*

*Id.* (emphasis added).

*Bird* further concluded that the state had failed to show that defendant possessed the rifle when it was recently stolen, stating, "In the present case there is no evidence to support a finding that defendant acquired the rifle near to the time it was stolen; no evidence to support a finding that anything connected to the rifle would suggest that it was stolen; and, no statement of the defendant which would infer knowledge." *Id.* at 64–65. The court reversed the conviction for retaining stolen property. *Id. Accord, Harris v. State*, 239 Ga.App. 723, 521 S.E.2d 864 (1999) (where husband stole gun, evidence was insufficient to convict wife of knowing retention of stolen property found in home two months later).

As in *Bird*, in this case there is no evidence that Mr. Langdon was involved with, or even aware of, the burglary of Mr. Dunnerman's home. No evidence was presented regarding the circumstances in which the gun came into Mr. Langdon's possession or as to when he acquired the gun. The evidence did show how the state and the defendant believed the gun arrived in the house—another person living there stole it. But, nothing connected that theft to the defendant. Nor did the state present evidence to support a finding that anything about the gun itself would suggest that it was stolen—the serial number was apparently untouched. Finally, Mr. Langdon made no statement that would suggest he knew or believed the gun had been stolen. The evidence does not demonstrate unexplained possession of recently stolen property.

### D. Additional Circumstances Showing Scienter

 Even had this Court believed that the state made a showing sufficient to show unexplained possession of recently stolen property, such evidence does not in itself permit an inference of retention of stolen property, for the crime also requires a showing of *scienter*—that is, that defendant possessed property *knowing* or *believing* it to be stolen. While evidence of possession of recently stolen property is relevant to the scienter requirement, it is not in itself sufficient to meet it. It must be combined with other evidence that, together with the evidence of possession, will permit the jury to infer that defendant *knowingly* possessed the stolen goods.

Here, the state argues it offered such evidence by showing that Mr. Langdon did not have a permit for the gun. It cites no case in which lack of a permit has been found to support an inference of knowledge or belief that property is stolen, however, and we have found none. The type of circumstantial evidence that prior cases have found sufficient includes such things as altering the appearance of the goods, hiding serial numbers, giving false, evasive or contradictory statements, suspicious and deceptive behavior, sale for an inadequate price, and so forth.

Possession of a gun without having applied locally for a permit is not on par with the above circumstances permitting an inference of knowing possession of stolen property. Even if it is some evidence, it is not enough, alone or combined with unexplained possession of recently stolen property, to make a submissible case.

Here, the evidence is particularly weak, for, as the state concedes, defendant had not applied for a permit to acquire any of his handguns, including those the state does not dispute were lawfully acquired, and he had no permit for the gun found hidden in his garage. He is not charged with stealing any of these guns. Even the victim had not obtained permits for his other two guns that were stolen. The state does not suggest either defendant's or the victim's lack of a permit for their other guns allows an inference that those guns were stolen or that he knowingly possessed stolen property as to them. Lack of a local permit to acquire a gun found in someone's possession simply cannot be held to be, in itself, sufficient "other circumstantial evidence" supporting the inference that he knew or believed it to be stolen, in the absence of some other basis for inferring, on the particular facts, that defendant had knowledge or belief of its status as stolen and intended to deprive its owners of it.

### IV. CONCLUSION

For these reasons, the Court determines that only speculation supports the inference Mr. Langdon knew or believed the gun was stolen and intended to deprive its owner of it. This is not sufficient to support the judgment for the class C felony of receiving stolen property. To hold otherwise would relieve the state of its burden of proving Mr. Langdon guilty beyond a reasonable doubt of each element of the offense. The judgment is reversed.

WHITE, C.J., WOLFF, BENTON and TEITELMAN, JJ., concur.

LIMBAUGH, J., dissents in separate opinion filed.

PRICE, J., concurs in opinion of LIMBAUGH, J.

STEPHEN N. LIMBAUGH, JR., Judge, dissenting.

I respectfully dissent.

In reviewing sufficiency of evidence claims, this Court is limited to determining

whether the evidence was sufficient for a reasonable juror to find each element of the crime beyond a reasonable doubt. *State v. O'Brien,* 857 S.W.2d 212, 215 (Mo. banc 1993). In doing so, the Court must view the evidence in the light most favorable to the verdict and accept as true all logical inferences that support the jury's finding. *State v. Grim,* 854 S.W.2d 403, 411 (Mo. banc 1993). The Court engages in such limited review out of deference for the role of the trier of fact, who is necessarily guided by inferences in its search for the truth. As long as these inferences are reasonable and are supported by the evidence, this Court must defer to the trier's judgment and ignore all opposing inferences. *O'Brien,* 857 S.W.2d at 215–16.

It is this prohibited indulgence in contrary inferences that leads the majority to conclude that the evidence presented at trial was insufficient to support the jury's verdict of guilt. However, the fact that the majority can articulate innocent explanations for defendant's possession of the stolen gun does not justify a rejection of the entirely logical inferences drawn by the jury or render the jury's conclusion either unreasonable or purely speculative. That was the import of *State v. Grim,* in which the Court specifically repudiated the notion that the state's circumstantial evidence must be "inconsistent with any reasonable theory of [the defendant's] innocence." 854 S.W.2d at 406. In direct contravention of this rule, the majority's opinion turns solely on purportedly reasonable theories of innocence, and not once is there an acknowledgement of the state's theory of guilt.

The state's theory is simply this: Defendant possessed the gun, having acquired it from his stepson one way or another (a permissible inference that the majority does not dispute), and believed that it was

stolen because 1) his stepson could not have obtained the gun legally (at age 20, he was underage to have obtained a permit), and 2) there was no need to conceal the gun otherwise. These are indeed logical inferences that support the jury's finding.

Having conceded that the evidence was "sufficient to allow the jury to infer Mr. Langdon's possession of the gun," and that "[t]he jury could even infer, from the gun's presence in the drawer, that defendant knew it was present ...," the only remaining issue is whether the evidence was sufficient to support a finding that Langdon knew or believed the gun was stolen. The knowledge or belief element may be established by proof of a defendant's unexplained possession of recently stolen property coupled with the defendant's suspicious or deceptive conduct. *See State v. Priesmeyer,* 719 S.W.2d 873, 875 (Mo.App.1986); *State v. Taylor,* 691 S.W.2d 379, 382 (Mo.App.1985). That is exactly what exists here: Defendant's unexplained possession of a gun stolen just three months before and hidden in one of his dresser drawers. The majority, however, concludes that though the jury could reasonably deduce that defendant possessed the gun, the evidence does not establish that the possession is unexplained or that the gun was recently acquired and, consequently, the jury could not have inferred guilt from the circumstances surrounding the possession. I find this conclusion particularly suspect, for the majority itself demonstrates that defendant's possession of the gun is indeed unexplained, by noting that "[t]here could be many ... explanations for how [the gun] came to be in the drawer." It is precisely because the question of defendant's possession invites, in the majority's own words, "pure speculation," that his possession can only be characterized as unexplained.

The majority's rejection of the evidence that defendant possessed "recently stolen property" is no less mystifying. Recognizing that the concept of "recency" is inherently relative, both federal and state courts have uniformly declined to establish a bright-line test for determining what constitutes a recent theft, choosing instead to define its limits by reference to the unique facts and circumstances of each particular case. 89 A.L.R.3d sec. 1[a] at 1206 (1979). As a result, "[w]hat may be considered 'recent' ... may vary from a few days to many months." *State v. Brown,* 744 S.W.2d 809, 811 (Mo. banc 1988). Under this flexible standard, and given the facts surrounding defendant's acquisition of the gun, three months is not such a prolonged interval between theft and possession to preclude an inference of guilt. *See State v. Hubbard,* 759 S.W.2d 387, 390 (Mo.App.1988) (finding that stolen automobile that was acquired six months after the theft qualified as "recently stolen property").

In addition, there is ample evidence of defendant's suspicious and deceptive conduct in connection with his unexplained possession of the recently stolen gun. First, testimony adduced at trial established that defendant's stepson was only 20—too young to get a permit, *see* sec. 571.090.1(1), RSMo (permit applicant must be at least twenty-one years of age), and as such, too young to legally obtain the gun, *see* sec. 571.080.1, RSMo (unlawful to receive or deliver a concealable firearm unless the transferee obtains and delivers to the transferer a valid permit authorizing the acquisition of the firearm). The obvious inference is that defendant knew that his stepson obtained the gun unlawfully. Second, and even more importantly, the evidence at trial also established that the gun was found in appellant's bedroom, in his dresser drawer, hidden under his clothing. Tellingly, defendant's many other guns—none of which were stolen—were placed elsewhere, in a plastic gun case kept in his bedroom closet. This concealment alone gives rise to a reasonable inference of guilty knowledge.

In sum, viewing the evidence in the light most favorable to the verdict, and accepting all logical inferences derived therefrom, I cannot conclude that the jury's finding was based on unreasonable inferences supported by "pure speculation." The evidence was sufficient to support the jury's finding that appellant possessed the gun with the requisite knowledge. As such, I would uphold appellant's conviction and affirm the judgment of the trial court.