**In the Interest of J.N.C.B., Appellant,**

**v.**

**JUVENILE OFFICER, Respondent.**

**No. WD 75299.**

Missouri Court of Appeals,
Western District.

June 28, 2013.

Patricia Ann Harrison, St. Louis, MO and Stephanie Allen, Rule 13 Student, for appellant.

Michael R. Fogal and Terence M. O'Malley, Kansas City, MO, for respondent.

Before Division Three: CYNTHIA L. MARTIN, Presiding Judge, JOSEPH M. ELLIS, Judge and GARY D. WITT, Judge.

GARY D. WITT, Judge.

J.N.C.B. appeals the judgment of the Circuit Court of Jackson County, Missouri, Juvenile Division sustaining the allegations against him for burglary in the second degree. J.N.C.B. argues on appeal that

the trial court erred in finding sufficient evidence that pursuant to Section 569.170,[1] J.N.C.B. committed the delinquent act of burglary in the second degree because no fact finder could reasonably conclude that each and every element was proven beyond a reasonable doubt, particularly the intent to steal. For reasons stated below, the judgment of the juvenile court is reversed.

### Factual and Procedural History

The following facts were adduced at trial from the sole witness, Edward Johnson ("Johnson"), a patrol officer for the Kansas City Public Schools. At approximately 7 p.m. on March 13, 2012, Johnson was called to Northeast Middle School due to an alarm trip that indicated an intrusion or motion within the building. Northeast Middle School is a closed school building and does not permit entry by anyone without authorization of the school board. The building contained property, including computers and furniture remaining from its prior use, but was no longer in use as a school.

Johnson did not notice any immediate signs of intrusion, so he waited for other officers to arrive. Another officer arrived and noticed that the south door of the building was propped open by a rock. Johnson and Officer Long[2] entered the building, and heard laughter, noise, and ruckus from the southeast side of the building.

Johnson testified that "as soon as we entered we heard voices, sounded like laughter and talking amongst themselves, that was coming from the southeast side of the building. As we were approaching that side we saw the juveniles look like they were going to exit out the east door."

Johnson and Long positioned themselves at the opposite end of the hallway as the juveniles approached the east exit. The officers shined their flashlights on the juveniles and ordered them to stop and freeze. One of the juveniles had possession of a broom, but Johnson testified that he did not believe the juveniles were trying to steal the broom. Johnson searched the juveniles and secured all items from their pockets. None of the juveniles had any weapons, tools, or items of property from the school in their possession.

The officers took the three juveniles into custody, including J.N.C.B., who was fourteen years old at the time, and held them at the east entrance until Kansas City police officers arrived. After being taken into custody by the Kansas City police officers, J.N.C.B. was alleged, by the juvenile officer, to have committed one count of burglary in the first degree, a class B felony, pursuant to section 569.160.[3]

At the close of the juvenile officer's evidence,[4] J.N.C.B. filed a motion for judgment of acquittal, arguing, among other things, that the juvenile officer failed to establish that J.N.C.B. possessed the req-

---

1. All statutory references are to RSMo 2000, as supplemented unless otherwise indicated.

2. Officer Long's first name does not appear in the record. He did not testify at the adjudication hearing.

3. Section 569.160.1 states: A person commits the crime of burglary in the first degree if he knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a

crime therein, and when in effecting entry or while in the building or inhabitable structure or in immediate flight therefrom . . . (3) There is present in the structure another person who is not a participant in the crime.

4. The juvenile officer also filed a second misdemeanor allegation stemming from facts arising on December 9, 2011. That allegation was dismissed by the juvenile officer and it is not part of this appeal.

uisite mental state for *any* degree of burglary and that the juvenile officer failed to prove that there was anyone present in the building, an element necessary for burglary in the first degree. The trial court overruled J.N.C.B.'s motion but concluded that the evidence established the lesser-included offense of burglary in the second degree beyond a reasonable doubt pursuant to section 569.170.

## Standard of Review

■ Review of juvenile proceedings is analogous to other court-tried cases. *M.A.A. v. Juvenile Officer*, 271 S.W.3d 625, 628 (Mo.App. W.D.2008) (citing *In the Interest of G.F.M.*, 169 S.W.3d 109, 111 (Mo.App. W.D.2005)). The judgment must be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *In re D.M.*, 370 S.W.3d 917, 922 (Mo.App. E.D.2012) (citing *In re J.A.H.*, 293 S.W.3d 116, 119 (Mo.App. E.D.2009)).

■ The determination on appellate review is whether there is sufficient evidence from which the fact finder could have found the defendant guilty beyond a reasonable doubt. *State v. Langdon*, 110 S.W.3d 807, 811 (Mo. banc 2003). In determining the sufficiency of the evidence, we "view the evidence and reasonable inferences which may be drawn therefrom in the light most favorable to the verdict and we ignore all evidence and inferences to the contrary." *C.L.B. v. Juvenile Officer*, 22 S.W.3d 233, 236 (Mo.App. W.D.2000) (citation omitted). "An inference is a conclusion drawn by reason from facts established by proof; a deduction or conclusion from facts or propositions known to be true." *State v. Gonzalez*, 235 S.W.3d 20, 24 (Mo.App. S.D.2007) (internal quotations and citation omitted). "While we are to accept as true all inferences favorable to

the State, they must be logical inferences that may be *reasonably* drawn from the evidence." *Id.* (emphasis added). We disregard contrary inferences, unless they are such a natural and logical extension of the evidence that a reasonable fact finder would be unable to disregard them. *Langdon*, 110 S.W.3d at 811 (quoting *State v. Grim*, 854 S.W.2d 403, 411 (Mo. banc 1993)). In viewing the evidence in the light most favorable to the judgment, "courts will not supply missing evidence or give the state the benefit of unreasonable, speculative or forced inferences." *Langdon*, 110 S.W.3d at 811–12 (quoting *State v. Whalen*, 49 S.W.3d 181, 184 (Mo. banc 2001)).

## Analysis

In his sole point on appeal, J.N.C.B. contends that the trial court erred in finding sufficient evidence that he committed the delinquent act of burglary in the second degree pursuant to section 569.170.1. That provision provides that "[a] person commits the crime of burglary in the second degree when he knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein."

The juvenile officer alleged in the petition that J.N.C.B. "knowingly entered unlawfully, and knowingly remained unlawfully, in ... Northeast Middle School ... for the purpose of ... stealing." J.N.C.B. does not dispute that the evidence supported the first element, that J.N.C.B. "knowingly enters unlawfully or knowingly remains unlawfully" in the building. Rather, J.N.C.B. contests the sufficiency of the evidence only as to whether the juvenile officer proved he was in the building "for the purpose of committing a crime," in this case, stealing.

Where, as here, there is no direct evidence of a defendant's intent to commit a crime, "[t]he elements of burglary second degree may be proved by circumstantial evidence." *State v. Jenkins,* 741 S.W.2d 767, 768 (Mo.App. E.D.1987) (citation omitted). "Proof of conduct before, during or after the offense are circumstances from which one's participation in the offense may be inferred." *Id.* "Evidence of forcible entry coupled with defendant's presence inside the building is sufficient to support a charge of burglary." *Jenkins,* 741 S.W.2d at 768–69. "Consummation of the intended crime of stealing is not essential to establishing that the intruder entered the building with the necessary intent to sustain the burglary charge." *State v. Haslar,* 887 S.W.2d 610, 614 (Mo.App. W.D.1994) (citation omitted). "A conviction may rest upon a collection of related facts, no one of which alone is sufficient to support a conviction." *Jenkins,* 741 S.W.2d at 768.

The tension between the parties centers on the often-cited proviso that "[i]ntent to steal may be established by unlawful entry into a building containing items of value." *State v. Moore,* 729 S.W.2d 239, 240 (Mo. App. E.D.1987) (where defendant entered a home and fled when confronted by owner, sufficient evidence supported conviction, but intent not established as a matter of law so as to constitute reversible error

for failure to provide instruction for lesser-included offense).[5] In affirming convictions against challenges to sufficiency of the evidence, although courts often note this particular inference, it has always been in tandem with additional supportive facts and inferences, often including forced entry, flight, weapons, burglary tools, admissions, established or readily presumed knowledge of the presence of valuables, or the movement of valuable items within the building by the defendant or an accomplice. *See, e.g., State v. Ford,* 367 S.W.3d 163 (Mo.App. W.D.2012) (defendant found inside building, items of value moved from different area of building found near where defendant was hiding); *State v. Gibbs,* 306 S.W.3d 178, 179 (Mo.App. E.D. 2010) (door to home had pry marks, defendant found rummaging through desk drawers before fleeing and later making incriminating statements); *Haslar,* 887 S.W.2d at 614–15 (defendant forcibly gained entry by kicking in door and left with small, square object); *State v. Hall,* 785 S.W.2d 652, 653 (Mo.App. E.D.1990) (defendant arrested as he was leaving garage that contained valuable tools; panel pieces of garage door had been scattered, one with a footprint); *State v. Blaney,* 801 S.W.2d 447, 449 (Mo. App. E.D.1990) (overruled on other grounds) (jury rejected defendant's testimony as to his reason for breaking into home while occupants were gone and was free to infer intent to steal); *Jenkins,* 741

---

5. In his brief, J.N.C.B. mistakenly reduced the *Moore* holding to the following: "there was insufficient evidence to prove the defendant had intent to steal, even though items of value [were] présent in the structure." That is not an accurate characterization of *Moore,* which J.N.C.B.'s counsel acknowledged at oral argument. The *Moore* court reversed a conviction upon determining that the trial court erred in not including a lesser-included instruction. The *Moore* court held that the evidence was sufficient to support a conviction but that as to the jury instruction: "The question is one of the defendant's intent and we cannot con-

clude that the evidence here established that intent as a matter of law." 729 S.W.2d at 240. We do not read that holding, which reversed a conviction for failure to present a lesser-included offense to the jury, as equating to a determination of insufficient evidence. In his brief, J.N.C.B. urges the same mistaken conclusion that he does with *Moore* in the case of *State v. Childress,* 901 S.W.2d 321 (Mo.App. E.D.1995) (holding sufficient evidence supported submission of lesser-included instruction; sufficiency of conviction of second-degree burglary not at issue).

S.W.2d at 769 (cut screen door, displaced barrier, fingerprints on window near valuable items sufficient to establish intent to steal); *State v. Patterson,* 741 S.W.2d 298, 299 (Mo.App. S.D.1987) (door kicked in and broken, defendant's flight established intent to steal); *State v. McNair,* 719 S.W.2d 113, 114 (Mo.App. S.D.1986) (defendant admitted he broke into building and wore items from building); *State v. McBurnett,* 694 S.W.2d 769, 773 (Mo.App. E.D.1985) (armed defendant entered occupied home and attempted to force open a bolt from lower level to first floor).

In short, though the permissive inference announced in *Moore* is oft-cited, it has never been held to support the establishment of the essential element of intent to steal in the absence of other indicia of guilt. The case before us thus presents an issue of first impression, as the only "fact" established in the record and on which the juvenile officer relies to establish J.N.C.B.'s intent to steal is that valuables were present in the school building. There was no evidence of forcible entry, only that a door was propped open.[6] Johnson testified that upon entering the building, he heard laughter, noise, ruckus, and people talking to each other. The officer was summoned to the building based on an alarm trip that indicated an intrusion *or motion,* but the juvenile officer presented no evidence that anything about the building was damaged or missing. When the officers spotted the juveniles, they looked "like they were going to exit out the east door." The officers positioned themselves in the direction they believed the juveniles were headed, near the exit. The record reflects no evidence of attempted flight when the officers shined their flashlights and ordered them to stop. The only item in possession of one of the juveniles was a broom, and juvenile officer's one and only witness testified he did not believe there was intent to steal it. While items of value may have been present in the building, there is no evidence that the juveniles were aware of or at any time were in the vicinity of those items of value. The school building had not been in use for an extended period of time, foreclosing a reasonable inference that a person unlawfully entering the building would anticipate the presence of valuables. Rather than trying to conceal their presence in the building, the evidence was that the juveniles were loud, talking, laughing, and causing a ruckus.

▮ The only fact from which a fact finder could infer intent to steal was that fourteen-year-old J.N.C.B. was unlawfully present and horsing around in a building that—at some undisclosed location therein—contained valuable items.[7] The juvenile officer argues from case law that J.N.C.B.'s intent to steal "is *presumed* when items of value are present" (emphasis added). In other words, the juvenile officer argues that standing alone, the mere presence of valuables in a building, with no other indicia of intent to steal, is sufficient to establish the essential element

---

6. The juvenile officer argues that because the door was propped open with a rock, it is fair to infer that the rock was used in forcibly opening the door. However, the complete lack of evidence that any glass was broken or that anything was damaged or amiss about the building undermines this argument. And we are bound by the precedent holding that "courts are not to supply missing evidence or give the state the benefit of unreasonable, speculative or forced inferences." *Langdon,* 110 S.W.3d at 811–12.

7. The evidence established that at some undisclosed location within the building there was some computer equipment and other items of furniture left after the school was closed. The age and value of the computer equipment and the furniture in the closed school building are not part of the record.

of intent beyond a reasonable doubt. We disagree.

As an initial matter, we note that any ability to find intent to steal from unlawful entry into a building containing valuable items results from a permissible inference rather than a mandatory presumption. "A mandatory presumption instructs the [factfinder] that it must infer the presumed fact if the State proves certain predicate facts. A permissive inference suggests to the [factfinder] a possible conclusion to be drawn if the State proves certain predicate facts, but does not require the [factfinder] to draw that conclusion." [8] *State v. Scurlock*, 998 S.W.2d 578, 584 (Mo.App. W.D.1999) (quoting *Francis v. Franklin*, 471 U.S. 307, 314, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985)). As our cases state that intent to steal "may be" established by certain facts, it is clear that the inference is permissible but not mandatory.

While a mandatory or conclusive presumption may violate due process by shifting the burden of proof to the defendant, *Scurlock*, 998 S.W.2d at 584,[9] a "permissive inference violates the Due Process Clause only *if the suggested conclusion is not one that reason and common sense justify in light of the proven facts* . . ." *Francis*, 471 U.S. at 314–15, 105 S.Ct. 1965 (emphasis added). This requirement comports with our standard of review that "[w]hile we are to accept as true all inferences favorable to the State, they must be logical inferences that may be *reasonably* drawn from the evidence." *Gonzalez*, 235 S.W.3d at 24–25 (emphasis added). Put another way, to satisfy due process concerns, there must be a " 'ra-

tional connection' between the basic facts that the prosecution proved and the ultimate fact presumed, and that the latter is 'more likely than not to flow from' the former." *Ulster Co. Court v. Allen*, 442 U.S. 140, 142, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979) (citation omitted).

As the U.S. Supreme Court determined in *Ulster*, it is relevant in analyzing a purely permissive inference that there is ample evidence in the record other than the inference to support a conviction. *Ulster*, 442 U.S. at 141, 167, 99 S.Ct. 2213. *See also State v. Taylor*, 691 S.W.2d 379, 382 (Mo.App. E.D.1985) (knowledge element proven by inference from unexplained possession as well as from false statements, deceptive, and suspicious behavior as representing himself as a doctor). The *Ulster* Court observed that typically a permissible inference is one part of an entire record that the State uses to prove guilt beyond a reasonable doubt. "As long as it is clear that the [permissive] presumption is not the sole and sufficient basis for a finding of guilt, it need only satisfy the [rational connection] test." 442 U.S. at 167, 99 S.Ct. 2213.

This case, however, is not one in which other evidence buttresses the otherwise permissive presumption. Rather, in this case, the presumption—that intent to steal may be established by unlawful entry into a building containing items of value—is the sole evidence for the element of intent. In *Ulster*, the U.S. Supreme Court held that where a permissible inference is the "sole and sufficient basis for the finding of guilt," the State "may not rest its case entirely on [the inference] unless the fact proved is sufficient to support the infer-

8. In some opinions, other terms, such as "mandatory presumption" and "permissive presumption" are used.

9. Further distinction between conclusive and rebuttable presumptions is not required in this case. *See Sandstrom v. Montana*, 442 U.S. 510, 517–18, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).

ence of guilt beyond a reasonable doubt." 442 U.S. at 167, 99 S.Ct. 2213.[10] That standard is not met here. There is no inherent or rational connection between the presence of valuables in a building and an intent to steal *unless* some other indicia of guilt (for example knowledge of the valuable's presence, flight, forcible entry, possession of burglary tools, or movement of the valuables) permits drawing that connection.

 The Missouri Supreme Court has held an inference can sufficiently support a conviction where the State has established an inference "and the inference *does not violate due process* or infringe upon a defendant's privilege against compulsory self-incrimination, even when the inference is not bolstered by other evidence." *State v. Brown*, 744 S.W.2d 809, 811 (Mo. banc 1988) (emphasis added). This principle necessarily presumes the integrity of the inference in the first instance. Our conclusion that the presence of valuables, without more, is insufficient to establish the essential element of intent

to steal beyond a reasonable doubt is thus not inconsistent with *Brown*. Rather, as a matter of constitutional necessity, where there is no other evidence to bolster a permissible inference, the facts proven for purposes of the inference must establish the element to which the inference is relevant beyond a reasonable doubt.[11] To hold otherwise would permit the State to establish an essential element of a crime by evidence that, standing alone, does not fairly support an inference of intent. Pursuant to the Due Process Clause of the Fourteenth Amendment to the United States Constitution, "no person may be deprived of liberty, 'except upon evidence that is sufficient fairly to support a conclusion that *every element* of the crime has been established beyond a reasonable doubt.'" *State v. Collins*, 154 S.W.3d 486, 493 (Mo.App. W.D.2005) (emphasis added).

 Under our facts, viewing the totality of the circumstances, we hold that the juvenile officer did not prove beyond a reasonable doubt that J.N.C.B. had the

---

**10.** *See also People v. Beltran*, 157 Cal.App.4th 235, 245, 68 Cal.Rptr.3d 489 (Cal.App.2007) (determining that permissive inference violated *Ulster* test where the permissive inference was the only evidence offered by the prosecution to prove an essential element of the case; the presumed fact did not follow the proved fact beyond a reasonable doubt).

**11.** We note, without deciding, a second constitutional concern stemming from the language of the inference itself. "[I]n criminal cases, the ultimate test of any device's constitutional validity in a given case remains constant: *the device must not undermine the factfinder's responsibility at trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt." Ulster*, 442 U.S. at 156, 99 S.Ct. 2213 (emphasis added) (citations omitted). "Common-law inferences, like their statutory counterparts, must satisfy due process standards in light of present-day experience." *Barnes v. United States*, 412 U.S. 837, 844–45, 93 S.Ct.

2357, 37 L.Ed.2d 380 (1973). "[L]ongstanding and consistent judicial approval of the instruction, reflecting accumulated common experience, provides a strong indication that the instruction complies with due process." Though the inference in our case has existed for at least decades, it gives us pause because it does not define "valuable" or "items of value." One owner's subjective idea of valuable (e.g., obsolete computers and aged office furniture) may be valued objectively as nothing. *See Jim Crockett Promotion, Inc. v. City of Charlotte*, 706 F.2d 486, 490–91 (4th Cir.1983) (whether deemed permissive or mandatory, presumption part of ordinance was lacking in rationality so as to violate due process; neither general experience nor reason nor common sense suggests that where three persons plus police officer merely complain about noise being "loud" or "disturbing" warrants an inference by a jury that their untested complaints amount to *"prima facie* evidence" that the noise was "loud" or "disturbing.")

intent to steal. The fact finder would have "had to engage in pure speculation" to find intent beyond a reasonable doubt. *See Langdon*, 110 S.W.3d at 814–15 (exploring lack of evidence connecting theft to defendant).

The juvenile officer argues that "[i]t is not required that something was stolen or even that there was an intent. The Court correctly drew its own inference." The juvenile officer's argument ignores that "[t]he intent to commit a crime is an essential element of burglary." *Gibbs*, 306 S.W.3d at 181 (citation omitted). "It is this element of criminal intent that separates burglary in the second degree from its lesser-included offense of trespass in the first degree." *Id.* (citations omitted). *The State must establish intent beyond a reasonable doubt. Id.*

While the juvenile officer may have established that J.N.C.B. was trespassing in the first degree in that he knowingly entered unlawfully or knowingly remained unlawfully in the building, the juvenile officer has not proven, beyond a reasonable doubt, that J.N.C.B. had the intent to steal. The evidence presented in support of burglary in this case is simply insufficient.

The juvenile officer argues too that J.N.C.B. "offered no evidence, no testimony from anybody that he and his fellow juveniles were in the building for any other reason than to steal something" and that "no alternative [reason to be there, e.g., cold weather] is presented, no theory as to why the juveniles were unlawfully in the building is offered." To the extent the juvenile officer is implying that J.N.C.B. needed to testify to explain his lack of intent, we direct the juvenile officer to the Fifth Amendment to the United States Constitution. The burden of proof to establish each and every element beyond a reasonable doubt fell solely on the juvenile officer, not J.N.C.B. *J.A.H.*, 293 S.W.3d at 120 (citation omitted). A defendant is not required to put on affirmative evidence as to the lack of an essential element of a higher offense. *State v. Yacub*, 976 S.W.2d 452, 454 n. 2 (Mo. banc 1998).

We take precedent dictating that we review whether an inference is "logical" and "may be *reasonably* drawn from the evidence," as the governing law in this case and hold that under these facts, there is insufficient evidence to find beyond a reasonable doubt that defendant had the intent to steal. "The concept of reasonable doubt is inconsistent with a procedure that permits an otherwise unassisted leap from aggregate likelihood to a conclusion of guilt." Charles R. Nesson, *Reasonable Doubt and Permissible Inferences: The Value of Complexity*, 92 Harv. L. Rev. 1187, 1208 (1979). Stated differently, circumstantial evidence will support a conviction beyond a reasonable doubt "so long as the evidence meets the minimal appellate standard required by due process." *State v. Grim*, 854 S.W.2d 403, 406 (Mo. banc 1993).

Because the juvenile officer failed to meet the burden of proof as to the element of the intent to steal, the judgment of the juvenile court is reversed, and J.N.C.B. is ordered discharged from the effects of that disposition.

All concur.