

# In the
# Missouri Court of Appeals
## Western District

| | |
|---|---|
| IN THE INTEREST OF: T.G., | |
| Appellant, | WD83608 |
| v. | OPINION FILED: |
| JUVENILE OFFICE, | JULY 21, 2020 |
| Respondent | |

**Appeal from the Circuit Court of Harrison County, Missouri**
**The Honorable Thomas R. Alley, Judge**

**Before Division Two: Karen King Mitchell, Chief Judge, Presiding,**
**Anthony Rex Gabbert, Judge, W. Douglas Thomson, Judge**

T.G. appeals his adjudication in the family court division of the Harrison County Circuit Court that he committed the class A misdemeanor of illegally possessing a deer. He claims in two points on appeal that there was insufficient evidence to support the adjudication and that the amended petition was deficient. The judgment is reversed.

## Facts

T.G. was 15 years old at the time of adjudication. T.G. was accused of the class A misdemeanor of "illegally possessing a deer" pursuant to section 252.040, RSMo,[1] when he

---

[1] All statutory references are to RSMo 2016 unless otherwise stated.

"attempted to load the deer in a Blue Chevrolet Blazer."[2]  The following evidence was presented at the adjudication:

Jeff Ramey was at home on November 3, 2019.  He saw a blue Chevrolet Blazer stop at a place where he had previously seen two deer cross the road.  There were at least two individuals inside.  After the vehicle stopped, Ramey heard a gunshot and saw the vehicle drive away to the north.  Still inside his house, Ramey called Conservation Agent Josh Roller on Roller's personal cellphone.  Ramey had seen Roller on his road and knew he was probably still in the vicinity.

Benjamin Bardot, a conservation agent with the Missouri Department of Conservation, was patrolling with Josh Roller on November 3, 2019.  He was with Roller when Ramey called to report that someone might be shooting deer from the roadway.  They were only about five minutes away when they received the call.  They found the blue Chevrolet Blazer 50 to 60 yards into a corn field that had just been cut.  Bardot observed three individuals trying to load a deer into the back of the Chevrolet.  T.G. was one of these individuals.  Ramey began to yell at the individuals, though his window was still rolled up.  The individuals dropped the deer and got back inside the Chevrolet.  The conservation agents activated their emergency lights and sirens and ordered them to stop.  A pursuit followed. [3]  T.G. was not driving the Chevrolet.  Of the other two individuals,

---

[2] T.G. notes in his brief that T.G.'s school progress card reflected that his GPA was 2.9168 and he had passing grades in all of his classes.  The Deputy Juvenile Officer had no prior dealings with him, though another juvenile officer had a prior incident with him.  Section 211.081 allows a juvenile officer to pursue an informal adjustment instead of filing a petition in the family court, and section 211.083 allows for both restitution and community service for such informal adjustments.  Instead of an informal adjustment, the Juvenile Officer elected to file a petition, forcing T.G. to formally go through the juvenile justice system.

The amended petition also alleged that T.G. acted in concert with the other two individuals and committed the class A misdemeanor of taking a deer by shooting a deer from the roadway and that T.G. acted in concert with the other two individuals and committed the class A misdemeanor of taking and illegally possessing wildlife with the aid of a motor vehicle.  The Juvenile Office abandoned those allegations the day of the adjudication.  The amended petition further alleged that T.G. committed the class A misdemeanor of resisting a lawful detention by entering a vehicle driven by another individual and leaving the scene.  The court did not sustain that allegation.

[3] Exhibit A, entered into evidence at the adjudication, is the report Bardot filled out.  It describes the pursuit in more detail and reveals that the conservation agents lost the Chevrolet during the pursuit.  The Chevrolet hit a deer

one later pleaded guilty and admitted he was driving the Chevrolet and the other later pleaded guilty and admitted he shot the deer. The deer had been shot one time. It was not tagged at the time the conservation agents arrived.

The family court found that T.G. committed the class A misdemeanor of illegally possessing a deer by attempting to load the deer in a blue Chevrolet Blazer. He was placed on probation under the supervision of the Juvenile Office.

This appeal follows.

## Standard of Review

"Review of juvenile proceedings is analogous to other court-tried cases." *J.N.C.B. v. Juv. Officer*, 403 S.W.3d 120, 124 (Mo. App. W.D. 2013). "The judgment must be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." *Id*. "The determination on appellate review is whether there is sufficient evidence from which the fact finder could have found the defendant guilty beyond a reasonable doubt." *Id*.

"In determining the sufficiency of the evidence, we view the evidence and reasonable inferences which may be drawn therefrom in the light most favorable to the verdict and we ignore all evidence and inferences to the contrary." *Id*. (internal quotation marks omitted). "An inference is a conclusion drawn by reason from facts established by proof; a deduction or conclusion from facts or propositions known to be true." *Id*. (internal quotation marks omitted).

---

during the pursuit. A Harrison County Sherriff's Deputy put a post on Facebook telling the public they were looking for a blue Chevrolet Blazer with front-end damage. The three individuals inside the Chevrolet were identified as a result.

"While we are to accept as true all inferences favorable to the State, they must be logical inferences that may be *reasonably* drawn from the evidence." *Id*. (internal quotation marks omitted). "We disregard contrary inferences, unless they are such a natural and logical extension of the evidence that a reasonable fact finder would be unable to disregard them." *Id*. "In viewing the evidence in the light most favorable to the judgment, courts will not supply missing evidence or give the state the benefit of unreasonable, speculative or forced inferences." *Id*. (internal quotation marks omitted).

**Analysis**

In his first point on appeal, T.G. argues there was insufficient evidence that he illegally possessed a deer. He claims the court did not find, and the Juvenile Office did not prove, that T.G. possessed a deer in a manner prohibited by the rules and regulations of the conservation commission as required by section 252.040. T.G. states that attempting to load a deer that someone else shot into a vehicle is not enough to constitute a violation of section 252.040.

Section 252.040 provides in relevant part: "No wildlife shall be … possessed … except in the manner, to the extent and at the time or times permitted by such rules and regulations; and any … possession or disposition thereof, except as permitted by such rules and regulations, are hereby prohibited…."[4] The "rules and regulations" are established by the conservation commission. Section 252.020.

---

[4]"[A] violation of section 252.040 … requires knowing conduct on the part of the offender." *Turner v. Missouri Dept. of Conservation*, 349 S.W.3d 434, 444–45 (Mo. App. S.D. 2011). T.G.'s flight from the conservation agents supports the conclusion that his conduct was knowing.

4

No evidence pertaining to specific rules and regulations created by the conservation commission was presented at the adjudication. The only evidence pertaining to the legal requirements for deer hunting was this testimony from conservation agent Bardot:

Q. The deer that was being attempt[ed] to be loaded into the vehicle, was it tagged?

A. No, it was not.

Q. What do Missouri Gaming regulations require with regard to the timing of tagging?

A. So, as soon as a someone, uh, shoots a deer, um then they, whenever they go and recover that animal, they have to notch their permit. Um, and there was no notching of the permit at all for that animal and it was never tele-checked either and tele-checking is then after you notch a permit um, you call in or you can even do it on the APP that we have and that is verified that you have got -– harvested an animal and that you are just putting it into our system that you have gotten one.

In closing arguments, the Juvenile Office argued:

You heard the evidence from two witnesses today with regards to paragraphs 4b, 4d. 4b alleges violations 252.040 the A misdemeanor of illegally possessing a deer, not shooting, not taking, possessing a deer and that on or about November 3, 2019, in Harrison County, the juvenile, in concert with, C.T.O. and J.W.B. attempted to load the deer, in a blue Chevrolet Blazer. Game Warden indicated that the deer was not properly tagged and not been permitted and never Telechecked. The defendant's participation in an attempt to load that deer into that vehicle puts him in violation of that Statute for possessing by acting in concert, having physical possession of that deer trying to load that in the vehicle in concert with the other two individuals.

In pronouncing judgment, the judge stated:

It's my understanding, and I'm not a deer hunter, and I have not shot a deer in my life, it's my understanding that you're supposed to tag the deer, almost immediately I think once you come into contact, you're supposed to tag it so it's clear.

ATTORNEY FOR THE JUVENILE OFFICE: That's the testimony the agent gave today.

…

5

THE COURT: It would seem that the Court, with regard to … the illegally possessed … deer that if the deer weren't tagged and … that T.G. was assisting putting it into the car and therefore he would be in possession of the deer illegally because it wasn't tagged.  So, with regard to Count B the Court will sustain the allegations.

The petition, judgment, and testimony at trial were utterly devoid of references to specific regulations.  Pertinent to this appeal, 3 C.S.R. 10-7.431 is entitled "Deer Hunting Seasons: General Provisions."  It provides in relevant part:

(9) Hunters who kill or injure a deer must make a reasonable effort to retrieve and tag it, but this does not authorize trespass.

(10) Hunters who take a deer shall void their permit immediately[5] by notching the month and date of harvest and shall keep the deer separate or distinctly identifiable from deer taken or possessed by another.  When the deer is not personally attended and prior to reporting through the Telecheck Harvest Reporting System, the voided permit or proper label shall be attached to the deer.  Deer may be possessed and transported only by the taker until reported through the Telecheck Harvest Reporting System.  All deer taken shall be accurately reported by the taker or in the taker's immediate presence through the Telecheck Harvest Reporting System by 10:00 p.m. on the day taken….

T.G. was accused of acting in concert with the shooter of the deer and the driver of the Chevrolet to illegally possess a deer.  Section 562.041.1(2) provides:

A person is criminally responsible for the conduct of another when … [e]ither before or during the commission of an offense with the purpose of promoting the commission of an offense, he … aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense.

Thus, whether the shooter of the deer illegally possessed the deer is relevant to T.G.'s guilt.

Bardot's testimony and the Juvenile Office's closing argument indicated that the possession of the deer was illegal in part because the deer was never Telechecked.  Pursuant to the regulation cited, *supra*, all deer taken shall be reported through the Telecheck system by 10 p.m.

---

[5] The definitions for the regulations established by the conservation commission are found in 3 C.S.R. 10-20.805.  "Immediately" is not a defined term in that regulation.

6

on the day taken. Exhibit A, Bardot's report, states that the pursuit of the Chevrolet occurred at 1728 hours. When the conservation agents observed the boys with this deer, it was not yet 10 p.m. on the day the deer was taken. Thus, the fact that the deer had not been reported through the Telecheck system cannot be a reason possession of the deer was illegal.

Significantly, the trial judge focused on the fact that the deer was not "tagged" when it was being put in the vehicle. During closing argument, the Juvenile Office also stated the deer wasn't tagged. Pursuant to 3 C.S.R. 10-7.431(10), the voided permit or proper label need only be attached to the deer when the deer is not personally attended. The testimony was uncontroverted that the shooter of the deer was still personally attending the deer when the conservation agents arrived. Thus, the fact that the deer was not tagged cannot be a reason possession of the deer was illegal.

Bardot also testified possession of the deer was illegal because a permit had not been notched. In closing arguments, however, the Juvenile Office stated that the deer was not permitted. No evidence was presented at trial regarding whether the shooter had a permit and failed to notch it or whether there was never a permit to notch in the first place. The evidence was uncontroverted that the boys left the scene when the conservation agents arrived. Nothing suggests, and it seems to be an impossibility, that the agents asked to see the shooter's permit and observed that it had not yet been notched.

Further, there was no definitive evidence regarding the timing of notching a permit. The evidence was undisputed at trial that the conservation agents came upon the boys within minutes after the deer was killed. Bardot testified that "as soon as a someone, uh, shoots a deer, um then they, whenever they go *and recover that animal*, they have to notch their permit." The boys were in the process of recovering the deer from a corn field when the conservation agents arrived. T.G.'s attorney stated in closing argument:

7

> Now, with respect to this possess the deer, well, it, the Juvenile Office makes a very big deal about the fact that this was not tagged. I want to point out that the deer hadn't even been loaded up yet at this point. It is possible that they were about to tag it. There really is no evidence that they weren't going to ever tag this. I am not sure we heard any evidence what the law is on how quickly after you take a deer, how quickly you have to tag it. It's unclear exactly how much time had lapsed.

The evidence at trial was insufficient regarding the timing of notching a permit, if the shooter had one, in this case.

In its brief, the Juvenile Office focuses on the part of 3 C.S.R. 10-7.431(10) that states: "Deer may be possessed and transported only by the taker until reported through the Telecheck Harvest Reporting System." As T.G. was not the shooter and the deer had not been reported through the Telecheck system, the Juvenile Office argues T.G. should not have attempted to help put the deer in the Chevrolet. We decline to read the regulation in such a way. Under the Juvenile Office's theory, if a group of hunters go out together in a place without cell-phone service and one of them shoots a deer and is unable to use the Telecheck system at that time the rest of the group must stand by and watch the sole shooter try to load a deer into a vehicle completely alone without assistance. Moreover, even in the light most favorable to the adjudication, the shooter's possession of the deer was not established to be illegal. Thus, T.G. could not have acted in concert with the shooter to illegally possess the deer.

The evidence did not establish why T.G.'s attempt to help two other juveniles load a deer into a vehicle was illegal or how that attempt violated the rules and regulations made by the conservation commission. The evidence did not reference specific regulations, suggested possession of the deer was illegal for reasons that are refuted by the regulations, and failed to

8

demonstrate that T.G.'s assistance in attempting to load the deer into the Chevrolet was outside the manner permitted by the regulations. T.G.'s first point is granted.[6]

## Conclusion

The judgment is reversed.

Anthony Rex Gabbert, Judge

All concur.

---

[6]T.G. complains in his second point on appeal that the amended information was insufficient because it failed to identify the specific regulations at issue in this case. We need not address this point given our disposition of T.G.'s first point.