

# In the Missouri Court of Appeals
## Western District

IN THE INTEREST OF: I.D.,        )

                Appellant,    )        **WD83393**

v.                              )

                              )

JUVENILE OFFICER,          )        FILED: **September 29, 2020**

           Respondent.   )

## APPEAL FROM THE CIRCUIT COURT OF BUCHANAN COUNTY
### THE HONORABLE DANIEL F. KELLOGG, JUDGE

### BEFORE DIVISION THREE: GARY D. WITT, PRESIDING JUDGE,
### LISA WHITE HARDWICK AND THOMAS N. CHAPMAN, JUDGES

I.D. appeals the juvenile court's judgment finding him delinquent because he committed acts that, if committed by an adult, would have constituted first-degree arson and second-degree involuntary manslaughter. I.D. contends the court failed to apply the common law infancy presumption of *doli incapax* to determine that he did not have the capacity to commit crimes. He also argues that the evidence was insufficient to find that he committed acts constituting arson and involuntary manslaughter. For reasons explained herein, we affirm the judgment.

**FACTUAL AND PROCEDURAL HISTORY**

Viewed in the light most favorable to the judgment, the evidence was that on February 20, 2019, ten-year old I.D. and four other minors, N.D., C.H., K.C., and C.S., gathered around midnight at a house located in Buchanan County, Missouri. N.D. is I.D.'s brother. None of the minors lived in the house, and the owner of the house was not home at the time. C.S. was sleeping in a bedroom near the front of the house while I.D., N.D., C.H., and K.C. were in the living room. Throughout the evening, I.D. and N.D. were "being destructive" by tearing up and breaking household items and by hitting the walls in the living room. After a while, I.D. and the others in the living room went into the bedroom where C.S. was sleeping. The group woke up C.S. to ask him where the marijuana was. C.S. told them he did not have any marijuana and went back to sleep. The rest of the group returned to the living room.

Around 3:00 a.m., I.D. and N.D. found a lighter and either shave gel or cologne in C.H.'s bag. I.D. sprayed the shave gel or cologne on a couch in the living room, while N.D. waited with the lighter. Realizing that I.D. and N.D. were about to burn the couch, K.C., one of the oldest present, requested I.D. and N.D. to wake up C.S. but neither of them did so. N.D. lit the couch on fire and the shave gel or cologne acted as an accelerant. When the fire started, I.D., N.D., C.H., and K.C. ran past the bedroom where C.S. was sleeping and out the front door. I.D. and N.D. were the last to leave the house. The group made no attempt to awaken or warn C.S. prior to leaving the house. The house ultimately burned down and collapsed with C.S. inside, resulting in his death. Emergency responders were not

2

aware that C.S. was in the house and therefore did not immediately discover his body in the debris.

Before authorities learned of C.S.'s death in the fire, I.D. and his neighbor, J.R.S.J., attended a party, where there was alcohol and marijuana. During the party, I.D. told J.R.S.J. that he had killed C.S. in the fire. I.D. laughed after making this unsolicited statement.

In April 2019, the St. Joseph Police Department heard rumors that C.S. had died in the fire on February 20, 2019, and launched an investigation. C.S.'s body was located in the debris, and dental records confirmed his identity. A subsequent autopsy revealed that C.S. was alive at the time the fire started and died of smoke inhalation and high temperature exposure. The autopsy reported the manner of his death as homicide.

When the police apprehended I.D., he was hiding in a suitcase. I.D. denied any involvement in the fire and claimed that he was in another room when the fire started. The Juvenile Officer of Buchanan County ("Juvenile Officer") filed a delinquency petition alleging that I.D. committed what would be the crimes of first-degree arson, second-degree involuntary manslaughter, and abandonment of a corpse if committed by an adult. After an adjudication hearing, the court found the facts alleging first-degree arson and second-degree involuntary manslaughter to be true beyond a reasonable doubt but did not find the facts alleging abandonment of a corpse to be true beyond a reasonable doubt. The court committed I.D. to the custody of the Division of Youth Services. I.D. appeals.

## STANDARD OF REVIEW

"Juvenile proceedings are reviewed in the same manner as other court-tried cases." *D.C.M v. Pemiscot Cty. Juvenile Office*, 578 S.W.3d 776, 786 (Mo. banc 2019) (citation and internal quotation marks omitted). We will, therefore, affirm a judgment in a juvenile proceeding "unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Ivie v. Smith*, 439 S.W.3d 189, 198-99 (Mo. banc 2014). "The credibility of the witnesses and the weight their testimony should be given is a matter to be determined at the hearing by the circuit court, which is free to believe none, part, or all of their testimony." *Pemiscot Cty.*, 578 S.W.3d at 786 (citation and internal quotation marks omitted).

When, as here, "a juvenile is alleged to have committed an act that would be a criminal offense if committed by an adult, the standard of proof, like that in criminal trials, is beyond a reasonable doubt." *Id.* Consequently, we must determine "whether there is sufficient evidence from which the fact finder could have found the defendant guilty beyond a reasonable doubt." *J.N.C.B. v. Juvenile Officer*, 403 S.W.3d 120, 124 (Mo. App. 2013). "In determining the sufficiency of the evidence, we view the evidence and reasonable inferences which may be drawn therefrom in the light most favorable to the verdict and we

4

ignore all evidence and inferences to the contrary." *Id.* (citation and internal quotation marks omitted).

## ANALYSIS

In Point I, I.D. contends that the juvenile court erred in failing to apply the infancy presumption of *doli incapax*. *Doli incapax* is a common law presumption that a minor between the ages of seven and fourteen lacks the capacity to commit crime. *State v. Adams*, 76 Mo. 355, 357-58 (1882).[1] The traditional burden of rebuttal is on the prosecuting party, and the rebuttal standard is "beyond all doubt." *Id*. at 358. If applied to the delinquency proceeding here, *doli incapax* would create a presumption that I.D. lacked the capacity to understand right from wrong, which the Juvenile Officer would then have had to rebut, in addition to proving the elements required for what would be arson and manslaughter charges if I.D. were tried as an adult. *Id*. at 357-58.

The Juvenile Officer notes, and I.D. does not dispute, that I.D. did not raise this issue below. Therefore, the Juvenile Officer asserts that we may review this issue for only plain error. We disagree. If applicable, *doli incapax* creates a *prima facie* presumption that has the effect of requiring that the prosecuting party rebut the presumption and prove capacity beyond all doubt, in addition to proving all other elements of the charges. *Adams*, 76 Mo. at 355-58. Thus, if the prosecuting party fails to bring evidence sufficient to support a finding of capacity in *doli*

---

[1] Children under seven are deemed to lack capacity entirely. *Adams*, 76 Mo. at 357-58.

*incapax* cases, we would treat that failure the same as we would treat the failure to support any other element. Our Supreme Court "long has held that sufficiency claims are considered on appeal even if not briefed or not properly briefed in the appellate courts." *State v. Claycomb*, 470 S.W.3d 358, 361 (Mo. banc 2015). Review is on the merits, and not for plain error. *Id*. at 362.

Our review on the merits need not take us far, however. The presumption of *doli incapax* has not been applied in delinquency proceedings in Missouri, and we decline to extend its application now. Traditionally, the *doli incapax* presumption has been applied only in criminal proceedings where a child faced adult criminal sentencing. *See Adams*, 76 Mo. at 357-58. The presumption has since been narrowly applied in a libel and slander case involving actual malice. *See Mundin v. Harris*, 134 S.W. 1076 (Mo. App. 1911). Although the juvenile court can adjudge what would be criminal conduct but for a child's infancy, delinquency proceedings are civil in nature, and thus stand "apart from the criminal justice system." *J.D.H. v. Juvenile Court of St. Louis Cty*, 508 S.W.2d 497, 500 (Mo. banc 1974). Missouri courts have previously discussed this distinction, noting:

> [T]he violation of a criminal statute by [an infant] is still a crime, *if such person has the capacity at common law to commit crime*; the Juvenile Court Act merely makes such violation also an act of delinquency, a jurisdictional ground for the administration, in a proper case, of its corrective and reformatory measures.

*State ex rel. Boyd v. Rutledge*, 13 S.W.2d 1062, 1065 (Mo. 1929) (emphasis added) (finding that the Juvenile Court Act's discretionary transfer of juvenile cases into a court of general jurisdiction for criminal proceedings, similar to Section 211.071

today, creates a clear distinction between criminal conduct and delinquency). Given that delinquency and criminal convictions are separate and distinct, we face the question of whether the *doli incapax* presumption, as applied in criminal cases, applies to delinquency proceedings as well.  We conclude that it does not.

The reason for the distinction between crime and delinquency is simple – delinquency proceedings protect children from the rigors of adult criminal sentences while still allowing for their "care, protection, and discipline" in the hope of rehabilitation.  *Rutledge*, 13 S.W.2d at 1065; §§ 211.011, 211.071.1 and 211.073.1, RSMo Cum. Supp.[2]  Moreover, as a reflection of public policy, Section 211.011 states that the Juvenile Code endeavors to provide all minors within its jurisdiction such "care, guidance and control as will conduce to the child's welfare and the best interests of the state."  § 211.011.  To apply *doli incapax* to delinquency proceedings would necessarily frustrate that purpose by precluding some children from delinquency findings conducive to their care, protection, and discipline.  This finding is consistent with the majority of other states that have reviewed this issue.  *See, e.g., Com. v. Ogden O.*, 864 N.E.2d 13 (Mass. 2007); *W.D.B. v. Com.*, 246 S.W.3d 448 (Ky. 2007); *In re Raymond G.*, 715 N.E.2d 486 (N.Y. 1999); Barbra Kaban, *Revitalizing the Infancy Defense in the Contemporary Juvenile Court*, 60 RUTGERS. L. REV 33, 52-56 (2007).

---

[2] All statutory references are to the Revised Statutes of Missouri 2016, as updated by the 2019 Cumulative Supplement.

I.D.'s sole contention for the applicability of *doli incapax* to the Juvenile Code rests on Missouri's adoption of the English common law in Section 1.010.1. He asserts the long-standing rule that common law principles are applicable "absent constitutional or statutory provisions to the contrary." *State v. Brown*, 443 S.W.2d 805, 805 (Mo. banc 1969). However, as explained above, the *doli incapax* presumption has traditionally been applied only when children were subject to full criminal convictions so that they might be protected from adult criminal sentences. *Adams*, 76 Mo. at 357-5; *see also* Section 1.010.1. While the common law may evolve over time, neither our Supreme Court nor the intermediate appellate courts have extended *doli incapax* to juvenile proceedings. *See La Plant v. E. I. Du Pont De Nemours & Co.*, 346 S.W.2d 231, 245-46 (Mo. App. 1961); Barbra Kaban, *Revitalizing the Infancy Defense in the Contemporary Juvenile Court*, 60 RUTGERS. L. REV 33, 52-56 (2007). Furthermore, Section 1.010.1 does not automatically reform the common law to apply to new areas of law merely because the legislature has declined to state otherwise; rather, Section 1.010.1 applies the common law as it existed in 1607 unless a court affirmatively expands it. *See Jones v. State Highway Comm'n*, 557 S.W.2d 225, 227-28 (Mo. banc 1977), *superseded on other grounds by Bartley v. Special Sch. Dist. of St. Louis Cty.*, 649 S.W.2d 864 (Mo. banc 1983). Because the English common law of 1607 was designed to protect children only from adult criminal punishment, we decline to find that it further extends to civil delinquency proceedings today.

A.W.G. Kean, *The History of the Criminal Liability of Children*, 53 L.Q. REV. 364, 365-68 (1937).

Moreover, we note that, when the Supreme Court in *Rutledge* explained the jurisdictional effects and constitutionality of releasing the juvenile court's jurisdiction of a juvenile case to a court of general criminal jurisdiction, it twice emphasized the need for a child to have capacity to receive a criminal conviction—but not for a delinquency finding. *Rutledge*, 13 S.W.2d at 1065-66. Here, without the need for capacity findings in delinquency proceedings, there, too, would be no need for an infancy presumption of capacity in such proceedings. In contrast, in criminal proceedings where a child's capacity remains an acute issue, the *doli incapax* presumption has utility. Further, because no Missouri court has applied *doli incapax* to juvenile proceedings and public policy supports not applying the presumption here, it is logical to view the discussion in *Rutledge* as additional persuasive evidence that *doli incapax* applies in criminal proceedings and not in juvenile proceedings. Therefore, the juvenile court did not err in failing to apply the *doli incapax* presumption. Point I is denied.

In Points II and III, I.D. challenges the sufficiency of the evidence to support the juvenile court's findings of knowing, reckless, and grossly negligent conduct under theories of first-degree arson and second-degree involuntary manslaughter, if I.D. were tried as an adult. Section 569.040.1 provides that "[a] person commits the offense of arson in the first degree if he knowingly damages an inhabitable structure by starting a fire when another person is present, and thereby recklessly

9

places such person in danger of death or serious physical injury."  A person acts knowingly under Section 562.016.3 when:

> (1) With respect to his or her conduct or to attendant circumstances when he or she is aware of the nature of his or her conduct or that those circumstances exist; or

> (2) With respect to a result of his or her conduct when he or she is aware that his or her conduct is practically certain to cause that result.

Reckless conduct occurs when a person "consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation."  § 562.016.4.

Section 565.027.1 provides that "[a] person commits involuntary manslaughter in the second degree if he acts with criminal negligence to cause the death of any person."  A person is criminally negligent "when he or she fails to be aware of a substantial and unjustifiable risk that circumstances exist or a result will follow, and such failure constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation."  § 562.016.5.  "Intent can be proved by direct evidence and reasonable inferences drawn from the circumstances surrounding the incident."  *State v. Brown*, 360 S.W.3d 919, 924 (Mo. App. 2012) (internal quotation marks omitted).

I.D. argues that his age prevented him from possessing the requisite *mens rea* for both offenses.  Specifically, I.D. asserts that his youth requires the application of a reduced standard of care to that of a child of similar age.  We

10

agree. In negligence, the children's standard of care is that of a child of "the same age, capacity, and experience." *Mantia v. Mo. Dept. of Transp.*, 529 S.W.3d 804, 810 (Mo. banc. 2017) (internal quotation marks omitted). Similarly, recklessness under Section 562.016.4 also requires a gross deviation of a reasonable person's standard of care. Finally, a knowing *mens rea* relates to the actor's subjective knowledge and understanding. § 562.016.3. Finding knowing conduct in a child necessarily requires consideration of the child's ability to subjectively understand his conduct due to factors such as age, capacity, or experience. Therefore, we review Points II and III with reference to I.D.'s age and under a standard of care fitting his age, capacity, and experience.

In the light most favorable to the verdict, the evidence was that, prior to starting the fire, I.D. and N.D. were behaving in a destructive manner by tearing up and breaking things in the house and by hitting the walls in the house. Before I.D. and N.D. lit the couch on fire, K.C. told them to wake up C.S., but they did not. I.D. then applied an accelerant to the couch while N.D. stood ready with a lighter. After I.D. had finished applying the accelerant., N.D. ignited the fire. Partaking in destructive behavior for several hours beforehand suggests I.D. and N.D. lit the fire in continuation of that behavior. This conduct points to I.D.'s knowledge that setting a fire was destructive in nature. Furthermore, N.D. waiting to ignite the fire until after I.D. applied the accelerant leads to a reasonable conclusion that the boys expected the accelerant to produce an enlarged fire in the home. Based on these facts, the court could reasonably find that I.D. was aware of the dangerous

11

nature of his conduct while he was spreading the accelerant on the couch or, alternately, that he was aware that his conduct of combining accelerant to the flame his brother was about to ignite with the lighter was practically certain to bring about a fire that would damage the home.

The court could also find that I.D. recklessly put other persons who were present in danger of death or serious injury.  I.D. was in the same living area as at least three other individuals, N.D., K.C., and C.H., and he had previously entered the room where C.S. was sleeping and had interacted with him.  Yet, I.D. never warned or awoke C.S., even when K.C. instructed him to do so.  Even as a minor, the court could still find that I.D. knew there was a risk of the fire spreading when they started it, as evidenced by the fact that he, along with N.D., K.C., and C.D., ran from the house after they started the fire.  The destructive behavior throughout the night also suggests I.D. was aware of the risk that combining the accelerant and flame would lead to a dangerous and destructive result.  The evidence is sufficient to support a finding, beyond a reasonable doubt, that I.D. consciously disregarded the fact that C.S. was still in the house, would be unable to exit the house, and would ultimately die in the fire.  By disregarding the risk of harm to C.S. before setting the fire, I.D.'s actions recklessly placed C.S. in danger of death or serious physical injury, and constituted a gross deviation from the standard of care which a reasonable person of I.D.'s age, capacity, and experience would exercise in the situation.  Because the other elements are not in dispute, there is sufficient evidence to support a finding of first-degree arson.

12

Finally, our analysis for criminal negligence is duplicative of the preceding *mens rea* analysis for what would be first-degree arson.  Because I.D. knew of C.S.'s presence and incapacity, and he was aware of the danger of the fire, the juvenile court could reasonably conclude that he violated his standard of care by failing to awaken C.S. both before and after starting the fire.  I.D. ran past the room where he knew C.S. slept and escaped the house only seconds after starting the fire.  He also ignored a direct request from K.C. that he awaken C.S. immediately before N.D. ignited the fire.  Even a child of I.D.'s age could understand the importance of such a request and the danger of non-compliance.  Both facts indicate a substantial disregard for the danger C.S. faced due to the fire.  The court reasonably concluded under these facts, beyond a reasonable doubt, that I.D. acted in gross deviation of what a child of I.D.'s age, capacity, and experience would do under similar circumstances.  There is sufficient evidence to support a finding of criminal negligence and second-degree involuntary manslaughter.

Along with partaking in generally destructive activity, applying accelerant to burn the couch, and interacting with others present in the home, I.D. was also involved in abnormal activity for his age, such as late-night activity, marijuana, and alcohol.  Additionally, I.D. told J.R.S.J. that he killed C.S. in the fire and laughed about it.  The juvenile court expressly found these facts credible and afforded them weight, and we decline to second guess these determinations.  These facts demonstrate, beyond a reasonable doubt, that I.D. acted knowingly,

13

recklessly, and in a criminally negligent manner.  Therefore, we deny Points II and III.

**CONCLUSION**

The judgment is affirmed.

_____

LISA WHITE HARDWICK, JUDGE

ALL CONCUR.

14